In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-404 CV


NO. 09-03-396 CV


____________________



FARMERS GROUP, INC., FARMERS UNDERWRITERS ASSOCIATION,


FIRE UNDERWRITERS ASSOCIATION, FARMERS INSURANCE EXCHANGE, and FIRE INSURANCE EXCHANGE, Appellants



V.



SANDRA GETER, ET AL, Appellees





and



IN RE FARMERS GROUP, INC., FARMERS UNDERWRITERS 


ASSOCIATION, FIRE UNDERWRITERS ASSOCIATION, FARMERS 


INSURANCE EXCHANGE and FIRE INSURANCE EXCHANGE






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-167,872


and


Original Proceeding






MEMORANDUM OPINION


 This interlocutory appeal arises from the trial court's certification of a class of Texas
homeowner's insurance policyholders under Texas Rule of Civil Procedure 42(b)(2). 
Individually and on behalf of the homeowners' class, appellee Sandra Geter ("Geter") sued 
Farmers Group Inc., Farmers Underwriters Association, Fire Underwriters Association,
Farmers Insurance Exchange, and Fire Insurance Exchange (collectively referred to as
"Farmers"), seeking a declaration of rights under a certain form of homeowners' insurance
policy (Texas Department of Insurance Form HO-B). Geter contends Farmers breached
contracts with its policyholders by failing to renew their HO-B policies and that she and the
members of the class are entitled to renewal of the coverage provided by those policies. (1) 
Farmers brings six issues attacking the trial court's class certification order, in addition to a
mandamus proceeding regarding the trial court's refusal to abate because of a pending class
action in Travis County, Texas. As to the appeal, we will reverse in part and remand; we will
deny the petition for writ of mandamus.

Background


 In November 2001, Farmers and other insurers requested the Texas Department of
Insurance ("TDI") to approve a new homeowners policy. After TDI approved a new policy
form, HO-A, which excluded coverage for most mold and water damage claims, Farmers
stopped offering its HO-B policies and instead began offering its policyholders HO-A
policies as the HO-B policies came up for renewal. 

 In response to policyholders' complaints that the new policy offered reduced coverage
at unfair prices, TDI and the Texas Attorney General began an investigation of Farmers. 
Subsequently, the following events occurred. 


 1. August 5, 2002 - the Texas Attorney General sued Farmers in Travis County on
behalf of Texas policy holders in State v. Farmers Group, Inc., No. GV-202501, 261st
Judicial District Court, Travis County, Texas. Included in the State's claims was Farmers'
"switching" of policyholders from the HO-B policy, allegedly resulting in less coverage but 
higher costs for policyholders. The State requested injunctive relief against Farmers, but did
not assert a claim for class relief. Further, the State did not challenge Farmers' nonrenewal
of the HO-B policies and did not seek a declaration that the HO-B policies were wrongfully
nonrenewed. 

 2. August 13, 2002 - TDI issued an Emergency Cease and Desist Order against
Farmers, requiring Farmers to cease and desist from increasing rates and seeking to regulate
the new rates.

 3. August 27, 2002 - Geter filed her class action petition seeking declaratory relief
regarding the HO-B policyholders' contractual rights to renewal of their policies. (2) 

 4. December 18, 2002 - the State amended its petition in the Travis County case to
assert a claim for settlement class relief and request creation of three settlement classes. One
of the settlement classes, the Rate Class, includes all policyholders "who received a notice
at any time after November 14, 2001, that their HO-B policy would not be renewed." The
damages sought are limited to the "restoration" of excessive premiums charged to
policyholders who bought the HO-A policies they were offered when their HO-B policies
were not renewed.

 5. December 18, 2002 - the State and Farmers entered into a settlement agreement
for the Travis County litigation. The claims released include those that arise out of or relate
to Farmers' decisions to "no longer offer HO-B policies" and to offer "HO-A policies in
place of HO-B policies." 

 6. January 2003 - Farmers filed a counterclaim in the Travis County litigation
requesting a declaratory judgment that: (a) its nonrenewal of HO-B policies and offering 
HO-A policies in place of HO-Bs was consistent with Texas law; (b) the restrictions on non-renewal of policies contained in TDI's non-renewal endorsement did not prohibit non-renewal based on Farmers' business decision not to offer Ho-B policies anymore; (c)
Farmers' offering HO-A policies was consistent with any and all obligations that may have
been imposed upon Farmers by the Insurance Code or TDI. 

 7. June 27, 2003 - the Travis County trial court certified the settlement class and
preliminarily approved the settlement agreement in the State's case against Farmers. 

 8. August 29, 2003 - the trial court here certified the Geter Class (3) after Farmers'
request for emergency stay of the certification hearing was denied by this Court and the
Texas Supreme Court. 

 9. December 17, 2003 - The Third District Court of Appeals heard oral arguments
on an appeal of the certification order in the Travis County case, Lubin v. Farmers Group,
Inc., No. 03-03-00374-CV, Third Court of Appeals, Austin, Texas. 

Standard of Review 


 As the Texas Supreme Court recently explained, appellate courts review a trial
court's decision on class certification for abuse of discretion, but a reviewing court must not
indulge every presumption in favor of the trial court's ruling. Henry Schein, Inc. v. Stromboe,
102 S.W.3d 675, 691(Tex. 2002). While some of the trial court's determinations, such as
"those based on its assessment of the credibility of witnesses, for example - must be given
the benefit of the doubt . . . [c]ompliance with Rule 42 must be demonstrated; it cannot
merely be presumed." Id. A trial court abuses its discretion when it: (1) acts arbitrarily or
unreasonably; (2) does not properly apply the law to the undisputed facts; or (3) rules on
factual assertions not supported by the record. Vincent v. Bank of America, N.A., 109 S.W.3d
856, 864 (Tex. App.--Dallas 2003, pet. denied).

 All classes seeking certification must satisfy all four requirements of Rule 42(a) and
at least one of the requirements of Rule 42(b). Tex. R. Civ. P. 42; Southwestern Refining
Co., Inc. v. Bernal, 22 S.W.3d 425, 433 (Tex. 2000). Under Rule 42(a), the plaintiff must
show: (1) the class is so numerous that joinder is impracticable (numerosity); (2) there are
common questions of law or fact (commonality); (3) the representative's claims are typical
of the class (typicality), and (4) the representative parties will protect the interests of the class
(adequacy of representation). See Tex. R. Civ. P. 42(a); Bernal, 22 S.W.3d at 433. Where
the 42(a) requirements have been satisfied, a Rule 42(b)(2) class may be certified if "the
party opposing the class has acted or refused to act on grounds generally applicable to the
class, thereby making appropriate final injunctive relief or corresponding declaratory relief
with respect to the class as a whole." See Tex. R. Civ. P. 42(b)(2). (4)

 In issue one, Farmers asserts the trial court improperly certified the class under Rule
42(b)(2). In reviewing this issue, we apply principles recently enunciated by the Texas
Supreme Court in Compaq Computer Corporation v. LaPray, 135 S.W.3d 657 (Tex. 2004).

 In considering class 42(b)(2) certification, the LaPray Court noted that Rule 42 is
silent on whether damages are available in a (b)(2) class and that the United States Supreme
Court has not yet determined whether a (b)(2) mandatory class can include claims for
monetary relief. LaPray, 135 S.W.3d at 665. Moreover, LaPray observed a split of
authority on this question in the U.S. Circuit Courts, (5) with the Fifth, Seventh, and Eleventh
Circuits holding that claims for monetary relief predominate over equitable claims unless the
monetary relief sought is incidental to the requested injunctive relief. Id. (citing Murray v.
Auslander, 244 F.3d 807, 812 (11th Cir. 2001); Jefferson v. Ingersoll Int'l, Inc., 195 F.3d
894, 898 (7th Cir. 1999); Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.
1998)). The Second and Ninth Circuits, however, employ an ad hoc balancing to determine
if certification is proper. Id.

 LaPray, however, declined to focus on "whether monetary relief predominates, or
whether injunctive or declaratory relief will be necessary at some point." Id. at 667. Rather,
LaPray made the following pertinent determinations discussed below.

 a. Individual notice and opt-out rights where monetary damages are sought

 Individual notice and opt-out rights must be considered by a trial court considering
(b)(2) certification for any class seeking monetary damages under any theory. Id. at 667
(noting further that due process may require individual notice and opt-out rights).

 b. Individual notice and opt-out rights where no damages are sought

 Individual notice and opt-out rights should be considered by a trial court considering
(b)(2) certification for any class seeking declaratory relief involving breach of warranty
claims, but excluding damages such as the instant case, in order to avoid any conclusion that
such classes are trying to "'shoehorn' their damages action into the '(b)(2) framework,
depriving class members of notice and opt- out protections.'" Id. at 670 (quoting Bolin v.
Sears, Roebuck & Co., 231 F.3d 970, 976 (5th Cir. 2000)). Concerns about such (b)(2)
certifications, however, are "largely irrelevant" where the trial court orders notice and opt-out
for the (b)(2) class members. Id.

 c. Rigorous Analysis

 The LaPray Court further determined trial courts are required to apply the Bernal
"rigorous analysis" standard to (b)(2) certification requests. (6) See Id.; see Bernal, 22 S.W.3d
at 435. The Bernal Court held that "[c]ourts must perform a 'rigorous analysis' before ruling
on class certification to determine whether all prerequisites to certification have been met."
Bernal, 22 S.W.3d at 435. "All prerequisites" means all four 42(a) elements-- numerosity,
commonality, typicality and adequacy of representation-- as well as one of the several 42(b)
elements. (7) LaPray, 135 S.W.3d at 671. See Tex. R. Civ. P. 42. If the class seeks (b)(2)
certification, "the trial court must rigorously analyze cohesiveness." LaPray, 135 S.W.3d
at 671.

 LaPray further instructs that the degree of cohesion required depends upon whether
the class members have a right to exit the class and that often the cohesion analysis "will be
identical to the 'predominance and superiority' directive undertaken by trial courts certifying
(b)(3) classes." Id. (citing Amchem Prods., Inc. v.Windsor, 521 U.S. 591, 594, 117 S.Ct.
2231, 138 L.Ed.2d 689 (1997)). But, where the class is mandatory, a more rigorous
definition of class cohesion should apply. LaPray, 135 S.W. 3d at 671. "[I]in such cases a
(b)(2) class 'may require more cohesiveness than [a] (b)(3) class. This is so because in [a]
(b)(2) action, unnamed members are bound by the action without the opportunity to opt
out.'" Id. (quoting Barnes v. Am. Tobacco Co., 161 F.3d 127, 142- 43 (3rd Cir. 1998)). 
However, where notice and opt-out rights are included in (b)(2) certifications, "the
cohesiveness required in a (b)(2) class need not be greater than the predominance and
superiority necessary for a class certified under (b)(3)." Id.

 We find the trial court here did not examine the notice and opt-out issues as now
required by LaPray, an examination that could affect the class's composition. And, of
course, the trial court has had no opportunity to analyze the cohesiveness that will exist if the
court orders notice and opt-out for the (b)(2) class members. Thus, we reverse those parts
of the trial court's judgment that determine Geter has carried her burden under Rule 42(b)(2). 
Other arguments that Farmers advanced in Issue one (8)
 need not be considered as resolution
of them in Farmers' favor would result in no greater relief than it receives here. 

 Issue two maintains the trial plan fails to consider the remedies raised by the
allegations and, thus, is insufficient under Bernal, 22 S.W.3d 425 and Stromboe, 102 S.W.3d
675. As we have determined that the trial court must consider notice and opt-out issues as
well as rigorously analyze cohesiveness, it necessarily must reconsider its trial plan in view
of any changes it must make in light of LaPray. Issue two is overruled.

 As to the 42(a) requirements - numerosity, commonality, typicality and adequacy of
representation - Farmers does not challenge the trial court's findings as to numerosity and
commonality, but does contest the findings on typicality and adequacy of representation in
issues three and five. 

Typicality


 In Issue five, Farmers maintains Geter's claims are not typical of the class. A class
representative's claim is typical if it arises from the same event or course of conduct giving
rise to the claims of other class members; it also must be based on the same legal theories. 
Hi-Lo Auto Supply, L.P. v. Beresky, 986 S.W.2d 382, 387 (Tex. App.--Beaumont 1999,
mand. denied). Geter must show there is a nexus or substantial similarity between her injury
and that of the class. Id. 

 Farmers cites Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 653 (Tex. App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.) and Adams v. Reagan, 791 S.W.2d 284, 290
(Tex. App.--Fort Worth 1990, no writ) in support of its argument that Geter is not an
adequate or typical representative because subsets of the class are subject to unique defenses. 
While both cases recognized the "unique defense" proposition, both also promptly limited
it. Weatherly, 905 S.W.2d at 653; Adams, 791 S.W.2d at 290. The Weatherly Court noted
that "factual differences have not defeated class certification in other securities actions where
the claims arose from the same legal theory." Weatherly, 905 S.W.2d at 653. Even where
class members did not rely on the same documents, the Adams Court held typicality still
existed because a common thread of deceit ran through all alleged claims. Adams, 791
S.W.2d at 290-91.

 Clearly, there is a nexus between Geter's claim and those of other class members. 
The claims all stem from Farmers' conduct in making representations within the HO-B
policies that the policies would be renewed according to the policy terms. See Weatherly,
905 S.W.2d at 653 (typicality found where "same misrepresentations in the same documents"
were made to investors and where class representative and other class members relied on
same theory of liability). Geter and the class members claim they are entitled to renewal of
the coverage provided by the HO-B policy form. And they rely on this claim in seeking a
declaratory judgment Issue five is overruled.


Adequacy of Representation



 In issue three, Farmers contends Geter cannot fairly and adequately represent the class
as required by Rule 42(a)(4). See Tex. R. Civ. P. 42(a)(4). 

 As we previously have explained:

 Adequate representation requires an absence of antagonism between the class
representatives and the class members, and an assurance the representative
parties will vigorously prosecute the class claims and defenses. Only a
conflict that goes to the very subject matter of the litigation will defeat a
party's representative status. A speculative conflict is insufficient to show an
abuse of discretion by the trial court finding adequacy of representation. 


Beresky, 986 S.W.2d at 388 (citations omitted). Adequacy of representation is a question of
fact addressed to the sound discretion of the trial court, and the trial court does not abuse its
discretion in finding adequacy if there is evidence to support the finding. See Glassell v.
Ellis, 956 S.W.2d 676, 681-82 (Tex. App.--Texarkana 1997, pet. dism'd w.o.j.). 

 A number of factors affect the determination of adequate representation; they include 
adequacy of counsel; potential conflicts of interest; the personal integrity of the plaintiffs; 
the representatives' familiarity with the litigation and their belief in the legitimacy of the
grievance; the manageability of the class considering geographical limitations; and the ability
to finance the class action. See Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 150 (Tex.
App.--Austin 1995, writ dism'd w.o.j.). Farmers attacks Geter's class representative
designation under two of the Forsyth factors: (a) conflict of interests and (c) familiarity with
litigation. 

 As to conflict of interests, Farmers maintains class counsel also are counsel of record
for two private plaintiffs in individual actions seeking damages for the same allegedly
wrongful conduct. Farmers says this representation prevents class counsel from serving here
where the class purportedly seeks only non-monetary relief. Relying on Zachery v. Texaco
Exploration & Production, Incorporated, 185 F.R.D. 230, 242 (W.D. Tex. 1999), Farmers
argues that class counsel, by requesting a Rule 42(b)(2) non opt-out class, foreclosed their
own individual clients' rights to pursue lawsuits seeking damages. The Zachery Court stated
that where there appears to be no clear opt-out right in a (b)(2) class action,

 the named Plaintiffs are asking the class members being represented here to
risk waiving their right to monetary damages solely so the action for disparate
treatment can proceed as a class action. Although the opt-out issue has not
been fully decided, the Court is unwilling to risk this result. The decision by
the named Plaintiffs to drop the monetary damages claim cannot be imposed
upon the absent class members without raising a very serious conflict of
interest. This conflict prevents certification of the proposed class for the
claims as stated.


Id. at 244. We appreciate the Zachery Court's concern regarding the opt-out issue. But in
light of our determination requiring remand for consideration of opt-out rights, any possible
conflict here should not be such as to preclude the trial's finding of adequate representation. 

 As to familiarity with the litigation, Farmers asserts that Geter has not considered the
effect of the Travis County Settlement Agreement upon her class members and as support
cites her testimony at the class certification hearing. However, at the hearing, Geter testified
she was familiar with the Travis County litigation, but had not reviewed the preliminary
approval order. Though she was keeping up with the Travis County litigation because it was
similar to that in Jefferson County, she stated she could not make a determination about the
effect of the Travis County litigation on the Jefferson County class because the Travis
County litigation had not been concluded. In Geter's affidavit, she stated that she had
reviewed the pleadings and motions filed in the Jefferson County case; that she had assisted
her attorneys in preparing the case; that her claim was the same as that of all other class
members and could be resolved by interpretation of the form HO-B policy; that she had
reviewed materials from TDI about Farmers' policies; and that she understood the
nonrenewal language in her policy was part of a form and was contained in other HO-B
policies sold in Texas. 

 The evidence indicates Geter understands the scope of the potential class and the relief
being sought. As there is evidence to support the trial court's adequacy finding, we conclude
the trial court did not abuse its discretion. See Glassell, 956 S.W.2d at 681-82. Issue three
is overruled.

 Issue four contends Geter lacks standing to serve as class representative. "Standing
is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to
a court's power to decide a case." The M.D. Anderson Cancer Center v. Novak, 52 S.W.3d
704, 708 (Tex. 2001) (citing Bland I.S.D. v. Blue, 34 S. W.3d 547, 553-54 (Tex. 2000)). 
Generally, standing requires a real controversy between the parties - one that will be
determined by the judicial declaration sought. Texas Workers' Compensation Com'n v.
Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995). One has standing to sue if he: (1) has
sustained, or is in immediate danger of sustaining, some direct injury as a result of the
wrongful act of which he complains; (2) has a direct relationship between the alleged injury
and claim sought to be adjudicated; (3) has a personal stake in the controversy; (4) the
challenged action has caused him some injury in fact; or (5) is an appropriate party to assert
the public's interest in the matter as well as his own interest. Sturges v. Wal-Mart Stores.
Inc., 39 S.W.3d 608, 615 (Tex. App.--Beaumont 1998), rev 'd on other grounds, 52 S.W.3d
711 (Tex. 2001). Whether a plaintiff has standing to bring a class action suit is a distinct
inquiry from whether a plaintiff is a proper class representative and standing must be
established before delving into adequacy issues described in 42(a) such as typicality or
adequacy of representation. Tex. R. Civ. P. 42(a); Met-RX USA. Inc. v. Shipman, 62 S.W.3d
807, 811 (Tex. App.--Waco 2001, pet. denied).

 Farmers contends that Geter fails to demonstrate any cognizable injury during the

time in which her HO-B policy was in force and, therefore, lacks standing. In support of this
assertion, Farmers cites Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315 (5th Cir. 2002). 
In Rivera, the class representatives for purchasers of an anti-inflamatory drug sued the drug's
manufacturer for economic damages on several theories; the Fifth Circuit dismissed the cause
for lack of standing. Id. at 321-22. This ruling was largely based on the particular theories
Rivera pursued, including a failure to warn of a potentially dangerous defect in violation of
the DTPA, defective operation of the product in violation of the implied warranty of
merchantability, and common law unjust enrichment. Under each theory, Rivera seemed to
argue that since the drug had caused some end-users liver damage, she deserved economic
compensation for purchasing and using the same product, no matter that it had worked
effectively for her and the members of her class. Id. at 319. That Rivera herself had neither
suffered liver damage nor alleged that other class members suffered any said damage caused
by the drug proved fatal to her case. Id. at 320.

 Rivera is distinguishable from our case, however. There, the court's main concern was
simply that Rivera and the other class members had suffered no personal injury warranting
relief under the theories she brought. Here, Geter alleges that Farmers inappropriately
refused to renew her homeowner's policy, along with all other class members' policies. 
Unlike Rivera, Geter has personally felt the effect of the alleged wrong. 

 Farmers further asserts that since Geter has obtained a new insurance policy from
another carrier, and does not seek damages for the difference in price between the HO-A and
HO-B policies, she has no potential injuries to attribute to the non-renewal. That Geter has
acquired new homeowner's coverage or does not seek damages proves unhelpful and
unpersuasive in our standing analysis because these facts are ancillary to the central issues
in Geter's petition. At issue is whether Farmers had the contractual right to refuse to renew
Geter's policy under the given circumstances and whether Geter has a right to renew the
policy. Not at issue, however, is the functionality of the policy during the coverage period. 

 Despite the policy's stated reasons for which non-renewal is warranted, Farmers's
initial notice of nonrenewal to Geter and the class indicates that it chose not to renew the
HO-B policy "[b]ecause of substantial losses which we have incurred." Farmers later
explained simply that it "no longer writes [that] policy form." In light of the apparent
contradiction between Farmers's reasons for non-renewal and the plain language of the
policy, Geter contends a justiciable controversy exists to determine "the grounds for
nonrenewal authorized by the contract for insurance and whether [Geter] and the class have
the right to have their HO-B policy renewed." (9)

 After considering the contract's non-renewal terms and Farmers' stated reasons for not
renewing Geter's policy, we reject Farmers' argument that Geter lacks standing. The
controversy in this case is whether Geter and the class have a right to renew their HO-B
policies based on the terms stipulated in the contract. A judicial declaration on this issue,
whether in the positive or negative, will effectively settle the dispute. And Geter certainly
has a personal stake in the outcome of the proceeding, as she is one of the over 400,000
Texas residents whom Farmers denied the right to renew HO-B coverage. Issue four is
overruled.

 Issue six maintains that certifying the Geter class improperly creates duplicative
litigation. Relying on Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 247-248 (Tex. 1988),
Farmers maintains the trial court has violated Texas's policy against duplicative litigation
and should have abated the case because the State's case was filed before Geter filed suit in
Jefferson County. 

 We review a trial court's action on a plea in abatement for abuse of discretion. Dolenz
v. Cont'l Nat'l Bank of Fort Worth, 620 S.W.2d 572, 575 (Tex. 1981). In Downer v.
Aquamarine Operators, Inc. 701 S.W.2d 238, 241-42 (Tex. 1985)(citations omitted),

 [t]he test for abuse of discretion is not whether, in the opinion of the reviewing
court, the facts present an appropriate case for the trial court's action. Rather,
it is a question of whether the court acted without reference to any guiding
rules and principles. Another way of stating the test is whether the act was
arbitrary or unreasonable.


 We consider not only when the cases were filed, but the substance of the pleadings. 
 See Perry v. Del Rio 66 S.W.3d 239, 252-253 (Tex. 2001)(in determining dominant
jurisdiction, an exception to the "first-filed rule" is when the first court does not have the full
matter before it). While here, the State sued Farmers in Travis County on August 5, 2002,
the State did not assert a claim for class relief, did not challenge Farmers' nonrenewal of the
HO-B policies, and did not seek a declaration the HO-B policies were wrongfully
nonrenewed. When, on August 27, 2002, Geter filed her class action petition, she sought
declaratory relief regarding the HO-B policyholders' contractual rights to renewal of their
policies. 

 It was not until December 18, 2002, that the State amended its petition and asserted
a claim for settlement class relief. Also on that date, the State and Farmers entered into a
settlement agreement that released certain claims including those arising out of that
nonrenewal of HO-B policies and the offering of HO-A policies in place of HO-B policies. 
And it was not until January 2003, that Farmers filed a counterclaim requesting a declaratory
judgment that its nonrenewal policies were consistent with Texas law. 

 Since Geter was the first to file a claim regarding Farmers' nonrenewal policies, the
trial court may have determined that it had acquired dominant jurisdiction over that claim. 
See Wyatt, 760 S.W.2d at 248. Or, even if the trial court decided the Travis County case was
"first filed," it may have determined that dominate jurisdiction was precluded in Travis
County where the Travis County court did not have "the full matter before it" prior to Geter's 
filing the Jefferson County suit. See Perry, 66 S.W.3d at 252. And, as to the amended
pleadings in the Travis County suit setting forth nonrenewal claims, the trial court could have
determined that such pleadings "should be treated for purposes of determining dominant
jurisdiction as a new suit as of the time it is filed, but not relating back to the commencement
of the action." Id. at 253 (emphasis added). 

 In view of the foregoing, we cannot say the trial court acted without reference to any
guiding rules and principles. Thus, we find the trial court did not abused its discretion in
denying Farmers' plea in abatement. Issue six is overruled.

 Farmers notes that its petition for mandamus is currently pending in this Court. See
In re Farmers Group, Inc., No. 09-03-396-CV (Tex. App.--Beaumont, 2004). Generally,
however, mandamus is not available to review the refusal of a trial court to abate an action
based on the pendency of another action, unless one of the courts directly interferes with the
other by issuing a conflicting order or injunction. Hall v. Lawlis, 907 S.W.2d 493, 494 (Tex.
1995) (orig. proceeding). "In the absence of such interference, the refusal to abate can be
adequately reviewed on appeal." Id. Here, there has been no interference. We deny
Farmers' petition for writ of mandamus.

 The trial court's certification order is reversed and the certification issue is remanded 
for further proceedings consistent with this opinion. We express no view on the district
court's ultimate decision whether to certify in light of today's opinion, nor do we comment
on the merits of the substantive claims.


 REVERSED AND REMANDED; WRIT DENIED.




 

 ________________________________

 DON BURGESS

 Justice


Submitted on May 2, 2004

Opinion Delivered October 21, 2004



Before Burgess, Murphy (10) and Sondock, (11) JJ.

DISSENTING OPINION



 While I agree with the majority in remanding this case to the trial court, I would
remand with directions to decertify the class. (12) The reasons are threefold:

 I. Mrs. Geter does not meet the threshold of standing.

 II. The State of Texas acting for all policyholders released Farmers from claims
asserted by Mrs. Geter.


 III. The trial court certified a competing class.


I. STANDING



 Mrs. Geter has alleged that she and the class seek a declaratory judgment on the
grounds "that Plaintiff and members of the class are entitled to renewal of the HO-B policies
nonrenewed by Defendants[,]" but "[t]he class does not seek consequential damages[.]" In
my opinion, the threshold question is standing. Whether a plaintiff has standing to bring
a class action is a different inquiry than whether a plaintiff is a proper class representative. 
"[A] plaintiff desiring to represent a class must have personally suffered an injury or wrong
to have standing." The M.D. Anderson Cancer Center v. Novak, 52 S.W.3d 704, 708 (Tex.
2001) (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20, 96 S.Ct. 1917, 48
L.Ed.2d 450 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d
343 (1975)).

 Mrs. Geter does not allege that she has suffered any actual injury. Instead she asserts
that "[w]hether individual insureds who get their HO-B [policy] back suffer a loss whether
the loss is covered and the like would be based on facts, events, and conduct that may or may
not occur at some future time and would be the subject of first party coverage litigation." 
Justice Owen has emphasized the necessity of injury in class action suits. "A named plaintiff
in a class action must show that the threat of injury in a case  is 'real and immediate' not
'conjectural' or 'hypothetical.'" (13) The M.D. Anderson Cancer Center, 52 S.W.3d at 710. 
"[I]f a [named] plaintiff does not assert that he or she as an individual suffered a concrete
injury, then the court's inquiry must cease." The M.D. Anderson Cancer Center, 52 S.W.3d
at 709 (citing Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and
Texas Dep't of Mental Health and Mental Retardation v. Petty, 778 S.W.2d 156, 164 (Tex.
App.- Austin 1989, writ dism'd w.o.j.)). 

 I agree that the trial court's decision to certify this case does not meet the
requirements of Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675 (Tex. 2002), or Compaq
Computer Corp. v. LaPray, 135 S.W.3d 657 (Tex. 2004), or the "rigorous analysis" standard
of Southwestern Refining Co., Inc. v. Bernal, 22 S.W.3d 425 (Tex. 2000), for class
representation under Tex. R. Civ. P. 42(a) and 42(b)(2). However, I believe Mrs. Geter's
lack of standing dispenses with any necessity to engage in lengthy discussion of whether she
can properly represent the class. 

 The majority states the controversy in this case to be whether Mrs. Geter and the class
have a right to renew their HO-B policies based on the policy terms in the contract. (14) 
Appellee relies on the same policy language to support her position that Farmers did not have
the right to refuse to renew the HO-B policy. 

 Anyone has the right to rely on the terms stipulated in any contract. Farmers would
not be free to refuse to honor those terms if they continued to offer HO-B policies. However,
appellant's position that Farmers was obligated to renew the HO-B policy assumes that there
can be no other reason for non-renewal and, more important, assumes that the company must
continue to offer the HO-B policy so long as she or any policyholder wishes to buy - ad
infinitum. 

 The evidence is undisputed. The Insurance Commissioner for Texas as well as a
former Deputy Commissioner and a Deputy Attorney General testified that Farmers was not
required to offer the HO-B policy. In fact after 2001, Farmers did not offer the policy for
sale to anyone. It is undisputed that Farmers never established the premium for the HO-B
policy after 2001. Clearly, neither Mrs. Geter nor any policyholder was required to renew
the HO-B policy. Mrs. Geter actually purchased an HO-A policy from another company. 

 Under the facts of this case, I consider non-renewal of the HO-B policy to be a non-issue. Since Farmers had no obligation to continue to issue the HO-B policy, and since the
policy was not offered, renewal was not a possibility under the facts of this case.

II. RELEASE


 An Amended Settlement Agreement and Stipulation (15) ("Settlement") was entered by
the 261st Judicial Court of Travis County on June 27, 2003. That Settlement grew out of
State v. Farmers Group Inc., No. GV-202501, filed in the 261st Judicial District Court,
Travis County Texas, by the Texas Attorney General on behalf of all Texas policyholders. 

 In its recitation of the facts, the majority indicates that the State "did not assert a claim for
class relief,  the State did not challenge Farmers' nonrenewal of the HO-B policies and did
not seek a declaration that the HO-B policies were wrongfully nonrenewed." I respectfully
disagree. The majority does recognize that the "claims released include those that arise out
of or relate to Farmers' decisions to 'no longer offer HO-B polices.'" 

 Actually the Settlement Agreement defines "Released Claims" to include:

 all existing, known and unknown claims, demands and causes of action against
the Released Parties, whether pending or threatened, suspected or unsuspected,
contingent or non-contingent, for all existing, known and unknown damages
and remedies that arise out of or relate to the acts and/or occurrences alleged
in the AG Lawsuit, or in the Cease and Desist Order or the Administrative
Proceedings, or in the OAG CIDs to the extent any such acts or occurrences
took place prior to November 30, 2002 including but not limited to issues
concerning or related to  the decision to no longer offer HO-B Policies
(including HO-Protector Plus (PTP), HO380 endorsement, TDP-2, TDP-3,
DF-Builder's Risk, and HO-A with HO-170 endorsement (collectively referred
to herein as "HO-B")), the offering of HO-A policies in place of HO-B
policies,  and all notices and statements that the Released Parties have
made or issued in connection with the above, including but not limited to
the notices of non-renewal of the HO-B policies . . . . 


 The Settlement Agreement defines "Released Parties" to mean and include:

 

 Farmers Group, Inc., individually and d/b/a Farmers Underwriters Association,
Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance
Exchange, Texas Farmers Insurance Company, Mid-Century Insurance
Company of Texas, Mid-Century Insurance Company, Farmers Texas County
Mutual Insurance Company, Truck Insurance Exchange, and Truck
Underwriters Association, as well as their affiliates, officers, employees,
agents, directors or governors, representatives, attorneys, predecessors,
successors and assigns.


 The "Releasing Party" is defined to include "Texas, the OAG (both on behalf of
Texas and, . . . the members of the Settlement Class)." In turn "Settlement Classes"
was defined to include "(1) all of the Exchanges' Texas homeowners insurance policyholders
(a) whose homeowners insurance policy incepted (including renewals) from December 28,
2001, through and including December 27, 2002, or (b) who received a notice at any time
after November 14, 2001, that their HO-B policy would not be renewed. . . ." 

 The Settlement Agreement also contained an opt-out provision. Although Mrs.
Geter's counsel attended the multi-day hearing in the 261st District Court, she did not
participate or intervene. Neither has she exercised the opt-out provision.

 The broad language contained in the Settlement Agreement released Farmers from
any further liability for non-renewal of HO-B policies. 

III. COMPETING CLASS


 I would find that the class action filed by Mrs. Geter is a competing class. Competing
class actions are not favored by the courts. Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245,
246 (Tex. 1988). They obviously do not promote judicial economy, one purpose intended
to result from class actions. Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000).

 Further, in this case, there is reason to believe that there is disagreement within the
class. Mrs. Geter purports to seek a non-opt-out declaratory judgment requesting no
damages, albeit with a caveat. (16) The evidence indicates that counsel for Mrs. Geter has filed
other lawsuits against Farmers seeking damages for failure to renew the HO-B policy on
behalf of two individuals who would be members of the class. "Courts are more inclined to
deny certification where there is 'hard evidence of real disagreement' within the class." Hi-Lo Auto Supply, L.P. v. Beresky, 986 S.W.2d 382, 389 (Tex. App.- Beaumont 1999, mand.
denied) (citing Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 151 (Tex. App.- Austin
1995, writ dism'd w.o.j.)).

CONCLUSION


 Reduced to basics, Mrs. Geter, as the class representative who suffered no damage,
filed this suit because Farmers refused to renew the HO-B policy - 

 a policy that Farmers was not required to offer or renew, 

 a policy that Farmers has not sold to anyone since 2001, 

 a policy for which no price was ever established, and 

 a policy that no policyholder was required to purchase. 

I would remand this case to the trial court with instructions to decertify the class. 

 ____________________________

 RUBY SONDOCK

 Justice (17)


Dissent Delivered October 21, 2004

1. Geter does not seek monetary damages.
2. Contained in paragraph 6, subparagraphs a, b, and c of the policy, the pertinent 
language is :


 a. We may not refuse to renew this policy because of claims for losses resulting from
natural causes.

 b. We may not refuse to renew this policy solely because you are an elected official.

 c. We may refuse to renew this policy if you have filed three or more claims under 
the policy in any three year period that do not result from natural causes.


If you have filed two claims in a period of less than three years, we may notify you in
writing, that if you file a third claim during the three year period, we may refuse to renew this
policy by providing you proper notice of our refusal to renew as provided in d. below. If we
do not notify you after the second claim, we may not refuse to renew this policy because of
losses.


A claim does not include a claim that is filed but is not paid or payable under the policy.
3. The trial court defined the class as plaintiff Sandra Geter and all persons who, on
or after November 14, 2001, received a notice from one or more Defendants advising them
that their current HO-B homeowner policies covering property in the State of Texas would
not be renewed upon expiration.
4. (b) Class Actions Maintainable. An action may be maintained as a class action if
the prerequisites of subdivision (a) are satisfied, and in addition:

 (1) the prosecution of separate actions by or against individual members of the class
would create a risk of

 (A) inconsistent or varying adjudications with respect to
individual members of the class which would establish incompatible
standards of conduct for the party opposing the class, or

 (B) adjudications with respect to individual members of the class
which would as a practical matter be dispositive of the interests of the
other members not parties to the adjudications or substantially impair
or impede their ability to protect their interests; or

 (2) the party opposing the class has acted or refused to act on grounds generally
applicable to the class, thereby making appropriate final injunctive relief or corresponding
declaratory relief with respect to the class as a whole; or

 (3) the questions of law or fact common to the members of the class predominate over
any questions affecting only individual members, and a class action is superior to other
available methods for the fair and efficient adjudication of the controversy. . . .


Tex. R. Civ. P. 42(b)


5. As Texas Rule of Civil Procedure 42 is modeled on Federal Rule of Civil
Procedure 23, "federal decisions and authorities interpreting current federal class action
requirements are persuasive in Texas actions." Ford Motor Co. v. Sheldon, 22 S.W.3d 444,
452 (Tex.2000).
6. "Generally, (b)(2) classes are premised on an assumption of homogeneity. . . . They
are presumed to be cohesive, hence notice and opt-out are not mandated by the rules."
LaPray, 135 S.W.3d.at 670 (citations omitted). "'[T]he predomination requirement of Rule
23(b)(2) serves essentially the same functions as the procedural safeguards and efficiency
and manageability standards mandated in (b)(3) class actions.'" Id. at 670-71 (quoting
Allison, 151 F.3d at 414-15).
7. The Rule 42(a) elements are numerosity, commonality, typicality and adequacy of
representation. See Tex. R. Civ. P. 42(a).

 Under Rule 42(b), the plaintiff must show one of the following: (1)
prosecution of separate actions would create risks of inconsistent adjudication or adjudication
that would be dispositive of, or impede the protection of, interests of non-parties; (2) the
party opposing the class has acted or refused to act on grounds generally applicable to the
class, thereby making appropriate final injunctive relief or corresponding declaratory relief
with respect to the class as a whole; or (3) questions of law or fact common to class members
predominate over questions affecting only individual members, and a class action is superior
to other methods for a fair and efficient adjudication of the controversy. See Tex. R. Civ. P.
42(b).
8. In issue one, Farmers presented the following arguments:

 

 (1.) The actual remedy sought by Geter is damages, not specific
performance. 

 (2.) The trial court has deprived class members and defendants of
procedural protections by granting class certification under 42(b)(2). 

 (3.) Geter's proposed declaratory relief does not form the basis for or
correspond to injunctive relief. 

 (4.) Geter's proposed class fails the "predominance" requirement because
the class members are too diverse and the class is unmanageable. 

 (5.) The trial plan does not comply with Bernal or Schien (an argument also
made in issue two.). 

9. Geter sues under the Uniform Declaratory Judgments Act, which provides, among
other things, that "[a] person interested under a . . . written contract . . . may have determined
any question of construction or validity arising under the . . . contract, . . . and obtain a
declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem.
Code § 37.004 (Vernon 1997). 

10. The Honorable Paul Murphy, sitting by assignment pursuant to Tex. Gov't Code
Ann. § 74.003(b) (Vernon Supp. 2004).
11. The Honorable Ruby Sondock, sitting by assignment pursuant to Tex. Gov't Code
Ann. § 74.003(b) (Vernon Supp. 2004).
12. I would answer appellant's issue number four in the affirmative, and answer issues
number one and number six in the negative.
13. Unless otherwise noted, all emphasis in this dissent is added.
14. Contained in paragraph 6, subparagraphs a, b, and c of the policy, the pertinent
language is:


 a. We may not refuse to renew this policy because of claims for losses
resulting from natural causes.

 b. We may not refuse to renew this policy solely because you are an
elected official.

 c. We may refuse to renew this policy if you have filed three or more
claims under the policy in any three year period that do not result from
natural causes.


If you have filed two claims in a period of less than three years, we may notify you in
writing, that if you file a third claim during the three year period, we may refuse to renew this
policy by providing you proper notice of our refusal to renew as provided in d. below. If we
do not notify you after the second claim we may not refuse to renew this policy because of
losses.


A claim does not include a claim that is filed but is not paid or payable under the policy. 
15. [A]mends and supersedes the Settlement Agreement and Stipulation entered into
on the 18th day of December, 2002, by and among the State of Texas ("Texas"), the
Office of the Attorney General ("OAG"), the Texas Department of Insurance ("TDI"),
including the Texas Commissioner of Insurance ("Commissioner") (hereafter sometimes
referred to collectively as the "State"), and defendants Fire Underwriters Association,
Farmers Group, Inc., individually and d/b/a Farmers Underwriters Association, Farmers
Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Farmers Texas
County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters
Association. . . ."
16. Mrs. Geter's original petition contains the following language:


 "Plaintiff and the class further reserve the right to seek and obtain any
supplemental relief to which they may be entitled under CPRC § 37.011, to the
extent such supplemental relief is found appropriate by this Court after
resolution of Plaintiff and the class' request for declaratory judgment." 
17. The Honorable Ruby Sondock, sitting by assignment pursuant to Tex. Gov't Code
Ann. § 74.003(b) (Vernon Supp. 2004).