**James and Patricia VINCENT,**
**Appellants,**

v.

**BANK OF AMERICA, N.A. f/k/a Bank**
**of America Texas, N.A., Appellee.**

No. 05–02–00363–CV.

Court of Appeals of Texas, Dallas.

July 9, 2003.

John H. Crouch, Kilgore & Kilgore, Inc., Dallas, for appellants.

Eric Scott Lipper, Hirsch & Westheimer, P.C., Houston, for appellee.

Before Justices MOSELEY, O'NEILL, and LAGARDE.[1]

## OPINION

Opinion by Justice LAGARDE (Retired).

James and Patricia Vincent appeal a judgment entered after a bench trial of a dispute involving a home equity loan. In four issues, appellants: (1) contend the trial court erred in refusing to order forfeiture pursuant to the Texas constitution; (2) request this court to order forfeiture as a sanction for appellee Bank of America's contempt of the trial court's order to correct its accounting methods; (3) contend the trial court erred in refusing to certify this case for treatment as a class action; and (4) request this court to remand the case for redetermination of attorney's fees

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

in light of the trial court's erroneous refusal to certify the class and order forfeiture. Appellee/cross appellant Bank of America asserts by way of cross points that (1) the trial court erred in determining that Bank of America failed to comply with and/or deviated from the loan agreement; (2) the trial court erred in determining that paragraph II, 6 of the loan agreement requires application of the scheduled installment earnings method of accounting; (3) there is no evidence or insufficient evidence to support the trial court's finding that Bank of America, outside of discovery, gave no explanation of its method of accounting; (4) the trial court erred in its construction of the contract and, thus, attorneys' fees should have been awarded to Bank of America and not to appellants; (5) there is no evidence or insufficient evidence that Bank of America accrued interest for statement periods in excess of the fixed payment amount; and (6) there are no pleadings to support the injunctive and declaratory relief granted. For reasons that follow, we modify the trial court's judgment by vacating that portion thereof granting injunctive relief, and we affirm the judgment as modified.

### Factual Background

In May 1998, James and Patricia Vincent (collectively the "Vincents") borrowed $130,400 from Bank of America (the "Bank") and signed a Federal Truth in Lending Disclosure & Loan Agreement (the "Loan Agreement"). This home equity loan was secured by the Vincents' homestead and is governed by the Texas constitution. Tex. Const. art. XVI, § 50(a)(6). After a dispute arose regarding how payments were being allocated between principal and interest, the Vincents filed suit against the Bank seeking, among other things, certification as a class action and forfeiture of all principal and interest on the loan. After a hearing, the trial court

denied class certification and the case proceeded to trial before the court on December 18, 2001. Final judgment was entered in the Vincents' favor on February 14, 2002, granting them injunctive and declaratory relief, but refusing to grant a requested declaration of forfeiture of all principal and interest due under the loan documents. Requested findings of fact and conclusions of law were filed by the trial court. Both the Vincents and the Bank have appealed the trial court's judgment.

### Constitutional Forfeiture

In their first issue, the Vincents contend the trial court erred in refusing to order forfeiture as required by the Texas constitution. The Vincents argue that once the trial court found the Bank failed to comply with its obligations under the home equity loan, forfeiture should have been automatic. They assert that breach of the following provision of the Loan Agreement triggered forfeiture:

6. ***Interest Calculation and Application of Payments.*** For purposes of interest calculation, we will assume that all months have thirty days, that each year has 360 days, that all payments are received on the last day of the billing cycle, and that the daily periodic rate for your account is constant. (The Daily Periodic Rate is calculated by dividing the annual percentage rate by 360.) Payments shall be applied in this order: (1) to any interest accrued to the assumed date of payment; (2) to scheduled principal reduction; (3) to any late charges accrued; and (4) to principal not yet paid.

The Vincents base this claim, in part, on section 50(a)(6)(Q)(x) of the Texas constitution. This section states:

(x) the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit within a reasonable time after the lender or holder is notified by the borrower of the lender's failure to comply;

*See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x). This section provides the substantive rights and obligations of lenders and borrowers involved in home equity loan transactions secured by homestead property in Texas. *See Stringer v. Cendant Mortgage Corp.,* 23 S.W.3d 353, 356 (Tex.2000). "Section 50(a)(6), in its totality, establishes the terms and conditions a home-equity lender must satisfy to make a valid loan." *Id. See* Tex. Const. art. XVI, § 50(a)(6). This section also "provides that the lender forfeits all principal and interest of the loan if it fails to comply with the obligations set out in section 50(a)(6)." *Id.* at 356–57. Thus, forfeiture is *only* available for violations of constitutionally mandated provisions of the loan documents. Violation of any other provision of the loan documents may result in traditional breach of contract causes of action only, with traditional breach of contract remedies. Therefore, the Vincents were only entitled to forfeiture if the Bank breached a provision of the Loan Agreement that was constitutionally mandated. There is nothing in the constitution that requires the language of paragraph II, 6 to be included in home equity loans secured by homestead property. Because paragraph II, 6 of the Loan Agreement is not constitutionally mandated, its breach will not support forfeiture.

The trial court found the Bank failed to comply with its obligations under the Loan Agreement in the manner of the application of the payments made by the Vincents. Paragraph II, 6 of the Loan Agreement, quoted above, provides that "[p]ayments shall be applied in this order: (1) to any interest accrued to the assumed date of payment; (2) to scheduled principal reduction; (3) to any late charges accrued; and (4) to principal not yet paid." The amount of each payment made by the Vincents from month to month that was applied to reduce the outstanding principal varied dramatically. As a result of the manner in which the Bank applied the payments made by the Vincents, found by the trial court to be in breach of paragraph II, 6, interest in excess of the $997.57 monthly payment called for in the loan documents accrued for several months. The Vincents contend this breach entitles them to automatic forfeiture under the Texas constitutional provision requiring that the loan be

scheduled to be repaid in equal successive monthly installments beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment;

Tex. Const. art. XVI, § 50(a)(6)(L). This contention, however, ignores the actual wording of the constitution. As long as the Loan Agreement, as originally entered into by the parties, complies with the provisions of the constitution, forfeiture is not an appropriate remedy. If the loan is *scheduled* to be repaid in accordance with this provision, it complies with the constitution. The Loan Agreement calls for three hundred monthly payments of $997.57 beginning on June 10, 1998. As written, it complies with the terms of the constitution. Accordingly, there was no violation of section 50(a)(6)(L) of the constitution and forfeiture is not an available remedy. The trial court, therefore, did

not err in denying forfeiture. We resolve the Vincents' first issue against them.

### Injunctive Relief

■ In the final judgment entered by the trial court, an injunction was issued in the Vincents' favor. In its cross issue number six, the Bank asserts, in part, the trial court erred in granting the injunction because it is not supported by the pleadings. The Vincents' third amended petition sought injunctive relief relating to the validity of the lien on their homestead in the event the trial court ordered forfeiture of all principal and interest. The trial court granted the Vincents an injunction ordering the Bank to:

> use the scheduled installment earnings method, i.e., a fixed amortization schedule, to account for all future, monthly payments made by Plaintiffs under the Loan Agreement.

■ "Texas law requires a judgment to conform to the pleadings and the verdict." *Affiliated Capital Corp. v. Musemeche*, 804 S.W.2d 216, 219 (Tex.App.-Houston [14th Dist.] 1991, writ denied); Tex.R. Civ. P. 301. A party may not obtain a judgment based on a theory not pled. *Wilson v. McCracken*, 713 S.W.2d 394, 395 (Tex.App.-Houston [14th Dist.] 1986, no writ). A judgment not supported by pleadings must be reversed. *Oil Field Haulers Assoc. v. R.R. Comm'n*, 381 S.W.2d 183, 191 (Tex.1964); *Affiliated Capital*, 804 S.W.2d at 219. The pleadings in this case do not support the injunction. Consequently, we resolve that portion of cross issue number six relating to the injunction in the Bank's favor. We modify the trial court's judgment by vacating that portion thereof granting injunctive relief.

In their second issue, the Vincents request this court to order forfeiture as a sanction for the Bank's failure to comply with the injunction. Because vacating the trial court's injunction renders the Vincent's second issue moot, we resolve that issue against them.

### Declaratory Relief Supported By the Pleadings

■ The Bank also asserts in its cross issue number six that the declaratory relief granted to the Vincents was not supported by the pleadings on file. Plaintiff's Third Amended Petition is the petition upon which the final judgment was rendered. The second count of that pleading sought a declaration that "the Bank's accounting for allocation of loan payments as between principal and interest breaches the terms of the Home Equity Loan Notes, ..." The final judgment awarded declaratory relief to the Vincents as follows:

> Paragraph II, 6 of that certain Federal Truth In Lending Disclosure & Loan Agreement—Home Secured Loan, dated May 5, 1998, in the original principal amount of $130,400 (the "Loan Agreement") requires Bank of America to account for Plaintiff's monthly loan payments using the scheduled installment earnings method, i.e., using a fixed amortization schedule, subject to the delinquency and/or default provisions of said Loan Agreement.

The rules of civil procedure require only that a plaintiff's petition contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." Tex.R. Civ. P. 47. In addition to seeking forfeiture based upon a breach of the Loan Agreement, appellants also sought declaratory relief in connection with the Loan Agreement. We conclude the third amended petition gave fair notice of the claim involved and supported the declaratory relief awarded in the judgment. We resolve the Bank's cross-issue number six

as it relates to the declaratory judgment against the Bank.

### Class Action Certification

In their third issue, the Vincents assert the trial court erred in refusing to certify this case as a class action. Trial courts enjoy a wide range of discretion in deciding whether to maintain a lawsuit as a class action. *Vinson v. Tex. Commerce Bank–Houston, N.A.,* 880 S.W.2d 820, 823 (Tex.App.-Dallas 1994, no writ). Our review of the trial court's decision on appeal is strictly limited to determining whether there has been an abuse of discretion in denying certification. *Id.* (citing *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334 (Tex.App.-Dallas 1987, writ dism'd w.o.j.)). A trial court abuses its discretion when it: (1) acts arbitrarily or unreasonably; (2) does not properly apply the law to the undisputed facts; or (3) rules on factual assertions not supported by the record. *Id.* "Although it may not be an abuse of discretion to certify a class that could later fail, ... a cautious approach to class certification is essential." *Southwestern Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 435 (Tex.2000). The trial court *may* certify a class action if a plaintiff satisfies the prerequisites of rule 42. Tex.R. Civ. P. 42. Texas law, however, does not *require* a trial court to certify a class action even if the facts sufficiently satisfy rule 42. *Vinson,* 880 S.W.2d at 824. That is, even if certification would have been proper, a denial might still not be an abuse of discretion. *Id.* (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985)). Because the matter is committed to the trial court's discretion, we uphold the denial of a class certification so long as the court acted rationally in the exercise of its discretion. *Id.* This Court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987).

But the trial court's exercise of discretion cannot be supported by every presumption that can be made in its favor. Actual, not presumed, conformance with rule 42 is required. *See Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 690 (Tex. 2002) (quoting *Bernal,* 22 S.W.3d at 434– 35); *see also* TEX. R. CIV. P. 42. Accordingly, we do not view the evidence in the light most favorable to the trial court's decision in either granting or denying certification, nor do we entertain every presumption in favor of the trial court's decision. *Stromboe,* 102 S.W.3d at 691. We determine whether a trial court, before ruling on a class certification, has performed a "rigorous analysis" on whether all prerequisites to certification have been met. *Bernal,* 22 S.W.3d at 435.

As this Court noted in *Vinson,* an appellant seeking to reverse an order denying class certification faces a formidable task. The Vincents must demonstrate that they satisfied all the rule 42 requirements for certification. Tex.R. Civ. P. 42. They must also show that the trial court's refusal to certify was legally unreasonable under the facts and circumstances of the case. *Vinson,* 880 S.W.2d at 824.

In their third amended petition, the Vincents sought forfeiture of all principal and interest on behalf of all members of the purported class. In the order denying class certification, the trial court concluded that "notice by individual class members and an opportunity to cure by the Bank are not suitable for class treatment." The Bank argues that the opportunity to cure provided by the above provision is a substantive right which would be abridged by class certification. Because the Vincents have failed to demonstrate

they suffered any compensable damages as a result of the Bank's actions and because of the importance of the notice and right to cure provision in the constitution, we conclude the Vincents have failed to demonstrate that the trial court's refusal to certify was legally unreasonable. *See Vinson,* 880 S.W.2d at 824. We resolve the Vincents' third issue against them.

### No Evidence or Insufficient Evidence

In cross issue number one, the Bank asserts the trial court erred in determining that the Bank failed to comply with and/or deviated from the Loan Agreement. We construe this issue to be a complaint that there was no evidence or insufficient evidence to support the trial court's finding that the Bank breached the Loan Agreement. In cross issue number three, the Bank asserts there was no evidence or insufficient evidence to support the trial court's finding that the Bank gave no explanation of its method of accounting outside of discovery. In cross issue number five, the Bank complains there was no evidence or insufficient evidence that the Bank "accrued interest for statement periods in excess" of the fixed payment amount.

When analyzing a legal sufficiency or "no evidence" issue, we consider the evidence in the light most favorable to the challenged finding, disregarding all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient and the no evidence challenge must fail. *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998).

When reviewing factual sufficiency points, we review all the evidence in the record, including any evidence contrary to the verdict. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Monroe v. Frank,* 936 S.W.2d 654, 658 (Tex.App.-Dallas 1996, writ dism'd w.o.j.). In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219, 224 (Tex.App.-Dallas 1989, writ denied); *Blackwood v. Tom Benson Chevrolet Co., Inc.,* 702 S.W.2d 732, 733 (Tex.App.-San Antonio 1985, no writ). The appellate court sets aside the verdict only if the trial court's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *Pilkington v. Kornell,* 822 S.W.2d 223, 230-31 (Tex.App.-Dallas 1991, writ denied).

Considering the evidence in the light most favorable to the trial court's finding, we conclude there was more than a scintilla of evidence supporting the finding that the Bank failed to comply with and/or deviated from the Loan Agreement. Additionally, after a review of all the evidence, we conclude there was sufficient evidence to support the finding. First, there was testimony that the Bank failed to properly account for a pre-payment in the amount of $100 made by the Vincents until after suit was filed. Additionally, the record reflects that on numerous occasions, the Bank failed to assume that payments made by the Vincents were received on the assumed date of payment, but recorded them as received on the actual date they were made. We conclude the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *See Pilkington,* 822 S.W.2d at 230-31. Additionally, even had the trial court erred

in determining the Bank failed to comply with and/or deviated from the Loan Agreement, we conclude such error to be harmless in light of the Vincents' failure to prove damages resulting from any breach. We resolve the Bank's cross issue number one against it.

In its cross issue number three, the Bank asserts there is no evidence or insufficient evidence to support the trial court's finding that it gave no explanation of its method of accounting outside of discovery. We disagree. The record reflects no explanation was given to the Vincents outside of discovery that the Bank was deferring interest from one month to the next. More specifically, when the Vincents made the December 10, 2000 payment on November 13, 2000, this payment was applied on the date it was received. Per diem interest was calculated from November 13, 2000 until the next payment was received on January 10, 2001. However, the amount due on January 10 remained the same, $997.57. The total interest charged by the Bank from November 13 through January 10 was $1,553.18, leaving an excess of $555.60 in interest due after the January 10, 2001 payment. This excess per diem interest was carried from month to month until paid. None of the statements sent to the Vincents and introduced at trial reflect this practice was disclosed to the Vincents outside of discovery. Viewing the evidence in the light most favorable to the trial court's finding, we conclude there is more than a scintilla of evidence supporting the finding. *See Formosa Plastics*, 960 S.W.2d at 48. Viewing all of the evidence in a neutral light, we conclude the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *See Pilkington*, 822 S.W.2d at 230–31. Even had the

trial court erred in making the challenged finding, we conclude such error to be harmless because the Vincents have failed to prove damages resulting from the breach. We resolve the Bank's cross issue number three against it.

In its cross issue number five, the Bank asserts there was no evidence or insufficient evidence that the Bank accrued interest for statement periods in excess of the fixed payment amount. As discussed above, the Bank accrued interest for the period between the December 2000 payment and the January 2001 payment in the total amount of $1,553.18. This is obviously interest in excess of the $997.57 fixed payment amount. We conclude that not only is there more than a scintilla of evidence to support this finding, the court's finding is not against the great weight and preponderance of the evidence. *See Formosa Plastics*, 960 S.W.2d at 48; *Pilkington*, 822 S.W.2d at 230–31. Again, even had the trial court erred in making this finding, we conclude such error to be harmless in light of the Vincents' failure to prove damages resulting from this breach. We resolve the Bank's cross issue number five against it.

### Scheduled Installment Earnings Method of Accounting

In its cross issue number two, the Bank complains the trial court erred in determining that paragraph II, 6 of the Loan Agreement required application of the scheduled installment earnings method of accounting. In construing a contract, the trial court should ascertain the objective intent of the parties as expressed in the writing itself. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex.1981). It should do this by examining the entire instrument, harmonizing and giving effect to all provisions to the extent possible so that none of the provisions will be ren-

dered meaningless. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Every clause of an instrument is intended to have some effect. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex.1985). A reasonable interpretation of an agreement will be preferred to one which is unreasonable. *See id.* The court should adopt the construction of the instrument placed upon it by the parties unless there is clear language in the instrument indicating an intention to the contrary. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979). If a contract is susceptible to two constructions, one of which would render it valid and the other invalid, construction validating it must prevail. *Id.; Dahlberg v. Holden*, 150 Tex. 179, 183, 238 S.W.2d 699, 701 (1951). We give the language of the contract its plain meaning unless to do so would defeat the parties' intention. *DeWitt*, 1 S.W.3d at 101.

 If the language in a contract can be given a certain or definite meaning, it is not ambiguous, and we are obligated to interpret the contract as a matter of law. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex.1999). An ambiguity does not arise merely because the parties to an agreement advance differing interpretations. *See Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 861 (Tex.2000). The contract is ambiguous only if the application of established rules of construction leaves an agreement susceptible to more than one reasonable meaning. *DeWitt County*, 1 S.W.3d at 100; *Lopez*, 22 S.W.3d at 861.

 When, as in this case, the contract is unambiguous, we apply the pertinent rules of construction and enforce the contract as written. *City of Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 783 (Tex.App.-Dallas 1992, writ denied); *see Lopez*, 22 S.W.3d at 862; *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). We construe the contract by giving the terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *See Heritage Resources, Inc.*, 939 S.W.2d at 121. Because the contract is unambiguous, we do not ask about the subjective intent of the parties to the contract. *See City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968) (if contract unambiguous, parties' objective, not subjective, intent controls). We simply apply the plain meaning of the contract language. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Spooner*, 432 S.W.2d at 518.

 The provision at issue here is not ambiguous. Applying the plain meaning of the contract language, the Bank was required to (1) assume all months have 30 days, regardless of the actual number of days in each month; (2) assume each year has 360 days, regardless of the actual number of days in each year; (3) assume each payment is received on the last day of the billing cycle, regardless of when the payment is actually received, *even if received early*; and (4) assume the daily periodic rate for the account is constant. The trial court concluded, and we agree, that this language required the application of the scheduled installment earnings method of accounting. Even had the trial court been in error in so construing the contract, however, we would hold such error to be harmless in light of the failure of the Vincents to establish damages in connection with the breach of this provision. We resolve the Bank's cross issue number two against it.

### Attorneys' Fees

In issue number four, the Vincents seek a remand of this case for determination of

reasonable and necessary attorneys' fees if this court reverses the trial court's order denying class certification and/or renders judgment of forfeiture. Because we affirm the trial court's order denying class certification and its refusal to order forfeiture, we need not, and do not, address the Vincents' issue number four.

■■■ In its cross issue number four, the Bank asserts that, because the trial court erred in its construction of the contract, attorneys' fees should have been awarded to the Bank, and not to the Vincents. The declaratory judgments act provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The grant or denial of attorney's fees in a declaratory judgment lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (noting abuse of discretion occurs when court acts arbitrarily or unreasonably). We broadly construe the trial court's discretion to award attorney's fees and costs in a declaratory judgment action. *McLendon v. McLendon,* 862 S.W.2d 662, 672 (Tex.App.–Dallas 1993). Nonetheless, any fees granted must be reasonable and necessary, which are questions of fact, as well as equitable and just, which are questions of law. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). As a general rule, a party seeking to recover attorney's fees carries the burden of proof to establish that it is entitled to them. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). "Although courts should

consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Id.*

■■ The Bank argues that it is entitled to attorneys' fees because "the only issue on which the Vincents prevailed should be reversed." However, "a trial court may, in its discretion, award attorneys' fees to the nonprevailing party in a declaratory judgment action." *State Farm Lloyds v. Borum,* 53 S.W.3d 877, 894 (Tex.App.-Dallas 2001, pet. denied). *See also Scottsdale Ins. Co. v. Travis,* 68 S.W.3d 72, 77 (Tex. App.-Dallas 2001, pet. denied); *Brush v. Reata Oil & Gas Corp.,* 984 S.W.2d 720, 729 (Tex.App.-Waco 1998, pet. denied). Even if we were to conclude that the Vincents did not prevail in the litigation, which we do not, awarding attorneys' fees to the nonprevailing party is not in itself an abuse of discretion. Because prevailing party status is the only ground upon which the Bank relies to demonstrate an abuse of discretion, we conclude it has failed to demonstrate that the trial court abused its discretion is awarding attorneys' fees to the Vincents. We therefore resolve the Bank's cross issue number four against it.

We vacate the trial court's injunction and affirm the judgment as modified.