NO. 07-10-00037-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 27, 2011

_____

JIMMY GLEN RIEMER, INDIVIDUALLY AND AS
INDEPENDENT EXECUTOR OF THE ESTATE OF HUGO
A. RIEMER, JR., DECEASED, RICHARD COON, JR., JUNE
MEETZE COON TRUST, JOHNSON BORGER RANCH
PARTNERSHIP, AND MONTFORD T. JOHNSON, III ON
BEHALF OF THEMSELVES AND OTHERS SIMILARLY
SITUATED, APPELLANTS

v.

THE STATE OF TEXAS AND JERRY PATTERSON, AS
COMMISSIONER OF THE GENERAL LAND OFFICE OF
THE STATE OF TEXAS, APPELLEES

_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 30,441; HONORABLE WILLIAM D. SMITH, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

This interlocutory appeal of an order denying certification of a class action[1] is

another installment in an ongoing dispute between landowners and the State of Texas

---

[1] *See* Tex. R. Civ. P. 42 (class actions).

over the boundaries of the Canadian River east of the Sanford Dam.[2] After a previous interlocutory appeal in this case,[3] we remanded to the trial court the landowners' claims alleging an unconstitutional taking of their property.[4] The landowners' pleadings included a class action petition, and after remand they sought certification of a class. Appellants Jimmy Glen Riemer, Richard Coon, Jr., the June Coon Trust, the Johnson Borger Ranch Partnership, and Montford Johnson III, are the proposed class representatives. Appellees are the State of Texas and Jerry Patterson in his capacity as Commissioner of the General Land Office (jointly, the State).

Appellants sought certification of a class described as:

All owners, from 1981 to the present, of any real property interest adjacent to the Canadian Riverbed from the Sanford Dam east approximately 12 miles to the west boundary of Section 13, Block 47, H.&T.C.RR. Co. Survey, on the north side of the river, and to the west boundary of Section 56, Block 46, H.&T.C.RR. Co. Survey, on the south side of the river.

They requested division of the class into two sub-classes:

Sub-Class 1: From 1981 to present, all owners of any surface interest in real property adjacent to the Canadian Riverbed from the Sanford Dam

---

[2] *State v. Brainard,* 968 S.W.2d 403 (Tex.App.--Amarillo 1998), *aff'd in part and rev'd in part,* 12 S.W.3d 6 (Tex. 1999)) provides additional facts surrounding the boundary disputes between the State and adjoining landowners along the Canadian River east of the Sanford Dam.

[3] *State v. Riemer,* 94 S.W.3d 103, 112 (Tex.App.--Amarillo 2002, no pet.).

[4] The Texas Constitution provides that, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." Tex. Const. art. I, § 17. "'Taking,' 'damaging,' and 'destruction' of one's property are three distinct claims arising under Article I, Section 17. However, the term 'taking' has become used as shorthand to refer to all three types of claims." *City of Dallas v. Jennings,* 142 S.W.3d 310, 313 n.2 (Tex. 2004) (citations omitted).

2

east approximately 12 miles to the west boundary of Section 13, Block 47, H.&T.RR. Co. Survey, on the north side of the river, and to the west boundary of Section 56, Bock 46, H.&T.C.RR. Co. survey, on the south side of the river.

Sub-Class 2: From 1981 to present, all owners of any mineral or leasehold interest in real property adjacent to the Canadian Riverbed from the Sanford Dam east approximately 12 miles to the west boundary of Section 13, Block 47, H.&T.RR. Co. Survey, on the north side of the river, and to the west boundary of Section 56, Bock 46, H.&T.C.RR. Co. survey, on the south side of the river.

In its order denying class certification, the trial court found the June Coon trust, the Borger Ranch partnership, and Montford Johnson III lacked standing to bring the claims alleged. It further found the claims of the proposed class representatives were not typical of the class claims, the representatives would not adequately represent the class, and none of the alternative grounds of Rule of Civil Procedure 42(b) were met.[5] Appellants bring an interlocutory appeal of the trial court's order.[6]

On appeal, appellants assert the trial court erred in its conclusion regarding the standing of the Coon trust, the Borger Ranch partnership, and Johnson, and assert the court abused its discretion in denying class certification because they satisfied the four requirements of Rule 42(a) and satisfied one or more of the Rule 42(b) requirements. We agree with appellants on the standing issue, but agree with the State that the trial court did not abuse its discretion in concluding the proposed class representatives would not fairly and adequately protect the interests of the class. Accordingly, we will

---

[5] Tex. R. Civ. P. 42(b).

[6] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (Vernon 2008) (permitting interlocutory appeal of orders refusing to certify a class).

reverse in part, affirm in part, and otherwise remand for proceedings consistent with this opinion.

Analysis

Standing

Before reaching the requirements for class certification "a named plaintiff must first satisfy the threshold requirement of individual standing at the time suit is filed, without regard to the class claims." *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 710 (Tex. 2001). "For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304-305 (Tex. 2008) (footnotes omitted). Standing is a necessary component of subject-matter jurisdiction, without which a court lacks authority to hear a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444-45 (Tex. 1993).[7] Standing is determined at the time suit is filed in the trial court. *Novak,* 52 S.W.3d at 708. We review a trial court's determination of standing *de novo. See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). In so doing, we take the pleadings as true and construe them in favor of the pleader. *Id.* at 226-28. "It has long been the rule that a plaintiff's good faith allegations are used to determine the trial court's jurisdiction." *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 502-03 (Tex. 2010) (citing *Brannon v. Pac. Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949)); *Brown v. Todd,* 53 S.W.3d 297, 305

---

[7] *But cf. Coastal Oil & Gas Corp. v. Garza Energy Trust,* 268 S.W.3d 1, 9 n.16 (Tex. 2008) ("[t]his Court has not indicated whether standing is always a matter of subject-matter jurisdiction").

n.3 (Tex. 2001) ("[b]ecause standing is a component of subject matter jurisdiction, we consider [it] as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff"). We also consider evidence relevant to the inquiry when necessary. *See Miranda,* 133 S.W.3d at 227. The standard for resolving a jurisdictional dispute "generally mirrors that of a [traditional] summary judgment." *Id.* at 227-28 (citing Tex. R. Civ. P. 166a(c)).

Generally, owning an interest in property at the time of its alleged taking would confer standing to sue for the taking. *See Hollywood Park Humane Soc'y v. Town of Hollywood Park,* 261 S.W.3d 135, 140 (Tex.App.--San Antonio 2008, no pet.) (citing *Tex. S. Univ. v. State St. Bank & Trust Co.,* 212, S.W.3d 893, 903 (Tex.App.--Houston [1st Dist.] 2007, pet. denied)). A case the State cites illustrates application of the rule. In *Allodial Limited P'ship v. North Texas Tollway Auth.*, 176 S.W.3d 680 (Tex.App.—Dallas 2005, pet. denied), an inverse condemnation case, the court found Allodial lacked standing to sue for damage to property it had purchased because its takings claim was not assigned to Allodial by the seller. Generally, the court noted, such a claim "belongs to the entity who owns the property at the time of the injury." *Id.* at 683.

In its order denying class certification, the trial court concluded only those owning land adjacent to the river in 1981 possessed standing to assert a takings claim. It found the Coon trust, the Borger Ranch partnership, and Johnson did not own land adjacent to the disputed river boundary in 1981, and each thus lacked standing to bring a takings claim.

5

In their live pleading, appellants *inter alia* alleged "they have been owners in fee simple of the properties [identified in their pleading] and have been and are at all material times entitled to possession of all of said property. [The State has] unlawfully entered upon and dispossess (sic) [appellants] of such premises and have continued to withhold possession." In a later pleading responding to a motion filed by the State, appellants alleged, "Through devise, descent, or assignment, the named Plaintiffs here own interests in the property that were taken by the State."

In its response to appellants' motion for class certification, the State challenged those appellants' standing to pursue a takings claim. To support its argument, the State directed the trial court to deposition excerpts. Johnson, appearing individually and as representative of the Borger Ranch partnership, testified the partnership was formed in 1998 and he individually purchased a surface interest in sections 22 through 26 along the north side of the river in 2003. Coon, appearing individually and as trustee of the Coon trust, testified to the effect the trust was created in the "early to mid" 1990s. When asked in 2008 if the trust still owned interests along the river, Coon responded "I can't answer that. I don't know. I don't think so."[8]

If, after taking as true a plaintiff's allegations of standing and construing its pleadings in the most favorable light and after considering any evidence of standing presented, a material issue of fact remains as to the plaintiff's standing, the trial court must not sustain the jurisdictional challenge. *See State v. Holland,* 221 S.W.3d 639,

---

[8] He later clarified his answer, testifying the trust did not own any mineral interests along the river as those interests were distributed to him and his sister in late 2007.

6

643 (Tex. 2007) (addressing plea to the jurisdiction, and citing *Miranda,* 133 S.W.3d at 227-28). While the deposition testimony to which the State pointed the trial court to support its challenge clouds the pleading picture and might give rise to an inference supporting the court's ruling, we do not agree the present state of the record conclusively demonstrates that the Coon trust, the Borger Ranch partnership, and Johnson each lacked standing to bring the claims alleged. We conclude that on the record before us the trial court erred in finding the Coon trust, the Borger Ranch partnership, and Johnson lack standing. Our disposition of this issue does not, of course, preclude its further consideration by the trial court. *See Oakland v. Travelocity.Com, Inc.,* No. 02-08-0260-CV, 2009 Tex. App. Lexis 4646, at *16 (Tex.App.--Fort Worth June 18, 2009, pet. denied) (mem. op.) (citing *Tex. Ass'n of Bus.,* 852 S.W.3d at 445) (standing is a component of subject matter jurisdiction which may be raised at any time).

Class Certification

For certification, a class action must meet the four requirements stated in Rule of Civil Procedure 42(a): (1) numerosity--the class is so numerous that joinder of all members is impracticable; (2) commonality--there are questions of law or fact common to the class; (3) typicality--the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation--the representative parties will fairly and adequately protect the interests of the class. *Citizens Ins. Co. of America v. Daccach,* 217 S.W.3d 430, 438 (Tex. 2007) (citing Tex.

7

R. Civ. P. 42(a)).  A class action must also satisfy at least one requirement of Rule 42(b).  *See* Tex. R. Civ. P. 42(b).

A class certification order is reviewed on appeal for abuse of discretion. *Bowden v. Phillips Petroleum Co.,* 247 S.W.3d 690, 696 (Tex. 2008) (citations omitted). "Although a trial court generally has broad discretion to determine whether to certify a class action, it must apply a rigorous analysis to determine whether all certification requirements have been satisfied." *Id.*

Further, certification is not mandatory, even if the requirements of Rule 42 are satisfied.  *Vincent v. Bank of Am., N.A.,* 109 S.W.3d 856, 864 (Tex.App.--Dallas 2003, pet. denied).  The word "may" in Rule 42(a) is permissive, not mandatory.  Denial of class certification may not amount to an abuse of discretion, even were certification proper.  *Id.*  An appellant "seeking to reverse an order denying class certification faces a formidable task."  *Id.*  It must demonstrate satisfaction of all the Rule 42 requirements for certification and that the trial court's refusal to certify was legally unreasonable under the facts and circumstances of the case.  *Id.*; *Cyganek v. A.J.'s Wrecker Serv. of Dallas, Inc.,* No. 05-08-01346, 2009 Tex. App. Lexis 5216, at *2-*3 (Tex.App.--Dallas July 8, 2009, no pet.) (mem. op.).

The trial court concluded appellants did not meet the typicality and adequacy of representation requirements of Rule 42(a).  Tex. R. Civ. P. 42(a)(3),(4).  Because we find it dispositive of the remainder of the appeal, we turn first to appellants' claim that the trial court abused its discretion in finding they could not fairly and adequately protect the interests of the class.

*Adequacy of Representation*

In the order denying certification the trial court concluded the class representatives would not fairly and adequately protect the class interests because (1) the claims of the representatives conflict with the claims of other proposed class members who have signed a 2002 agreement with the State, the Canadian River Mineral Boundary Agreement for Western Hutchinson County, Texas; and (2) the claims of the representatives conflict with claims of other proposed class members who own land on opposite sides of the Canadian riverbed.

The Boundary Agreement recites, among other things, that controversies have arisen concerning the location of the boundary of the Canadian River. It further recites its named parties, which include the State and J. M. Huber Corporation, the State's oil and gas lessee, intend to "resolve all disputes among them as to the boundary of their mineral estates between the bed of the [Canadian River] and the lands adjacent to the river. [The parties] also wish to establish a framework for settlement so that other State Lessees and other Riparian Owners may elect to join this Agreement upon the same terms and conditions." The agreement defines "Riparian Owners" to include "any other owner of an oil, gas or mineral interest (including a leasehold interest) in lands adjacent to the [Canadian River] and who hereinafter joins this Agreement by ratification . . . ." In the agreement, its parties stipulate to an agreed riverbed, centerline, and banks. It includes a replacement oil and gas lease and provides for certain additional "compensatory" mineral royalty payments. Finally, it contains a release purporting to absolve the State of any liability to the riparian owners for claims pertaining to or relating

to the boundary of their mineral estates between the bed of the river and the lands adjacent to the river.

The record contains some eighty-five documents, executed by some seventy-one individuals and entities, purporting to ratify the Boundary Agreement. Needless to say, none of appellants have ratified the Boundary Agreement. The record does not indicate if others ratified the agreement.[9]

The only witness appearing live at the certification hearing was a putative class member who signed the Boundary Agreement. He expressed opposition to his inclusion in the class and any attempt to invalidate the agreement.

The trial court also found a conflict in the claims of class representatives and those of other proposed class members owning land on opposite sides of the river bed. The essence of this conclusion is a potential conflict between landowners on the north side of the river and those on the south side. According to Johnson's affidavit testimony, for a time even predating the Sanford Dam water has not continuously flowed in the riverbed. Appellants have not yet obtained a survey identifying the lands they assert were taken by the State. According to the State, the absence of flowing water in the riverbed creates a likelihood of conflict between landowners on either side of the river. That is, those on the north will desire placement of the bed as far south as possible and those on the south will desire the opposite placement. Appellants dismiss

---

[9] At oral argument, however, the State indicated others among the proposed class have ratified the agreement.

10

this argument as a "red herring" interposed to detract from their claim of land taken on both sides of the riverbed.

In a class action, class representatives must fairly and adequately protect the interests of the class. Tex. R. Civ. P. 42(a)(4). This requirement means: (1) an absence of antagonism between the class representatives and the class members, and (2) an assurance the representatives will vigorously prosecute the class claims and defenses. *E & V Slack, Inc. v. Shell Oil Co.,* 969 S.W.2d 565, 568 (Tex.App.--Austin 1998, no pet.). The primary consideration is antagonism between the interests of the representatives and the remaining members of the putative class. *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.--Fort Worth 1990, no writ). In other words, the adequacy inquiry serves to uncover conflicts of interest between class representatives and putative class members. *Amchem Products v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997).

Claims of class conflict must not be speculative but must go to the "very subject matter of the litigation" to defeat a party's claim of representative status. *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund,* 886 S.W.2d 470, 476 (Tex.App.--Austin 1994, writ dism'd w.o.j.) (claim must not be speculative); *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 151 (Tex.App.--Austin 1995, writ dism'd w.o.j.) (claim must go to the subject matter of the litigation). Thus, in *Horton v. Goose Creek Independent School District,* the court noted class certification may be denied for lack of adequate representation if there is a possibility of significant disagreement within the proposed class. 690 F.2d 470, 485-86 (5th Cir. 1982).

Likewise, in *Swain v. Brinegar,* lack of adequate representation was found because of the possibility some putative class members would not support a class action. 517 F.2d 766, 780 (7th Cir. 1975). And conflict potentially precluding a finding of adequacy of representation was noted in *Stirman v. Exxon.* 280 F.3d 554 (5th Cir. 2002). There the court reversed a certification order finding among other things, the district court erred by failing to rigorously address a class representative's adequacy as she had no incentive to fully litigate claims not applicable to her and she previously agreed to abide by a Texas statute of limitations even though this might cause other class members residing in other jurisdictions with longer statutes of limitations to lose some of their claims. *Id.* at 563 & n.7. The inability of putative class representatives to adequately represent a broad class where conflict appears was shown in *Mayfield v. Dalton.* 109 F.3d 1423 (9th Cir. 1997). There, two members of the Marine Corps judicially challenged a program requiring members of the armed forces provide DNA samples. They sought certification of a class consisting of all Navy and Marine Corps personnel compelled to participate in the program. *Id.* at 1424. Finding a conflict of interests between the putative representatives and class members, the circuit court noted the two putative representatives opposed the program but in the broad class they proposed, others undoubtedly held a contrary position, approving the program and desiring its full enforcement. *Id.* at 1427.

Appellants first point out the January 1, 2002 effective date of the Boundary Agreement was some six months after appellants filed their original class action petition, and argue that by settling with some landowners the State thus created an asserted conflict that did not exist when certification was first requested. Appellants cite *Lubin v.*

*Farmers' Group, Inc.,* No. 03-03-0374-CV, 2009 Tex. App. Lexis 8584, at *49-*52 (Tex.App.--Austin Nov. 6, 2009, no pet.) (mem. op.) for the proposition that class certification should not be defeated by a conflict created by wrongdoing on the part of one opposing certification. But the timing of the State's settlement with some landowners has not been determined to be "wrongdoing," and we see no parallel in the record before us between the State's action in entering into the Boundary Agreement and the insurance code violations described in *Lubin*. *See id*. at *51-*52.

Appellants also argue there is no actual conflict between the class representatives and proposed class members who have ratified the Boundary Agreement because the outcome of the present suit will not prohibit those who have joined the agreement from continuing to honor it.[10] In that regard, we cannot ignore the antagonism toward the Boundary Agreement reflected in the record. Appellants told the trial court during the certification hearing there is a question whether the agreement is "even valid," and expressed a desire to address that question in the present suit. And on appeal, appellants' argument on this point contains the phrase "assuming the Agreement is not void." These and other similar statements in the record, together with the testimony of the landowner who opposed his inclusion in the class, lend support to the trial court's recognition of potential conflict between members of the proposed class who have settled with the State and those who have not.

---

[10] Our consideration of the Boundary Agreement and its impact on class certification should not be taken as any comment on the validity or effect of the Boundary Agreement, or a comment on the effect of the relief sought in the present suit on the rights of those who have ratified the agreement. No such question is before us.

We conclude the potential and actual conflict in the proposed class concerning ratification of the Boundary Agreement vis-à-vis advancing the claims of the class representatives, the validity of the agreement, and the location of the north and south boundaries of the riverbed goes to the very subject matter of the takings claims alleged. Therefore, on this record we are unable to say the trial court abused its discretion by finding the class representatives could not fairly and adequately protect the interests of the class. Because it was for appellants to satisfy each of the requirements of Rule 42(a), and as the trial court did not abuse its discretion by its finding regarding adequacy of representation, it is unnecessary to our disposition of the appeal to discuss typicality and the alternative requirements of Rule 42(b).

## Conclusion

Finding the evidence was not conclusive that the June Coon trust, the Johnson Borger Ranch Partnership, and Montford Johnson III lack standing, we reverse that portion of the trial court's order. Otherwise, we affirm its order denying class certification and remand the case for further proceedings consistent with this opinion.

James T. Campbell
Justice

14