# IN THE SUPREME COURT OF TEXAS

══════════

No. 11-0548

══════════

JIMMY GLEN RIEMER, ET AL.,
PETITIONERS,

v.

THE STATE OF TEXAS AND JERRY PATTERSON, AS COMMISSIONER OF THE
GENERAL LAND OFFICE OF THE STATE OF TEXAS,
RESPONDENTS

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued November 6, 2012**

JUSTICE GREEN delivered the opinion of the Court.

CHIEF JUSTICE JEFFERSON did not participate in the decision.

Prior to proceeding as a class action, Rule 42 of the Texas Rules of Civil Procedure requires certain prerequisites to be met. In this case, a small group of landowners sought to certify a class composed of all owners of any real property interests in a twelve-mile stretch of land located adjacent to the Canadian River in the Panhandle to litigate alleged takings claims against the State of Texas. The trial court denied certification, finding that the landowners failed to satisfy two of Rule 42(a)'s prerequisites and any one of the three Rule 42(b) requirements. The court of appeals

affirmed, holding that certain conflicts identified by the trial court prevented the landowners from satisfying Rule 42(a)(4)'s adequacy-of-representation prerequisite. We conclude that neither of the conflicts identified by the trial court prevented the landowners from satisfying Rule 42(a)(4); therefore, the trial court abused its discretion when it found otherwise. Accordingly, we reverse the court of appeals' judgment and remand the case back to that court for further proceedings consistent with this opinion.

## I. Background

This is the second case to reach this Court involving an ongoing dispute between landowners and the State concerning the boundaries of the Canadian River in Hutchinson County. *See generally Brainard v. State*, 12 S.W.3d 6, 11–12 (Tex. 1999) (discussing the history and impetus surrounding the dispute, namely the completion of the Sanford Dam in 1965 and resulting surveys). The origins of this particular suit trace back to 1993 when the State sued Hugo A. Riemer, Jr. for an alleged trespass to land. On Riemer's motion, the trial court abated the case until this Court's consideration of *Brainard*. *See Brainard*, 12 S.W.3d at 10 (holding that changes brought about or influenced by an artificial structure that was not created by the riparian owner must be considered in marking the gradient boundary of a river). Because the State owns the riverbeds and the minerals underneath the riverbeds in Texas, the boundary of the riverbed is critical in determining the rights of the State, riparian mineral interest owners, and riparian surface owners. *See* TEX. PARKS & WILD. CODE § 1.011(c); *see also* TEX. NAT. RES. CODE §§ 11.041(a)(1), 51.011 (providing that the Permanent School Fund includes the mineral estate in riverbeds).

2

After this Court's decision in *Brainard*, Glen Riemer, individually and as independent executor of his father's estate, filed a counterclaim against the State for trespass and conversion. The State nonsuited its claims against Riemer. Riemer, joined by Richard Coon, Jr., the June Meetze Coon Trust, and the Johnson Borger Ranch Partnership (collectively "class representatives"), filed this putative class action against the State of Texas and its oil and gas lessee, J.M. Huber Corporation. The class representatives alleged, *inter alia*, an unconstitutional taking of their property arising from the State's approval of a 1981 survey that established the boundaries of a portion of the Canadian River at issue in this case.[1] Pursuant to Rule 42, the class representatives moved to certify a class composed of all owners of any real property interests in a twelve-mile stretch of land adjacent to the Canadian River in Hutchinson County. Prior to the certification hearing, the State, Huber, and various non-party mineral interest owners settled their disputes by entering into the "Canadian River Mineral Boundary Agreement" (MBA), which used the 1981 survey to establish the boundary lines amongst the parties to the settlement. The named plaintiffs in this case also settled with Huber.

The trial court ultimately denied class certification, finding that certain named plaintiffs lacked standing to bring the alleged takings claims. The trial court also found that the proposed class action failed to satisfy the typicality and adequacy-of-representation prerequisites of Rule 42(a), and any one of the requirements outlined in Rule 42(b). The class representatives filed an interlocutory appeal challenging the trial court's order denying class certification. The court of appeals rejected

---

[1] The State filed a plea to the jurisdiction on sovereign immunity grounds, which the trial court denied. The court of appeals reversed, dismissing all claims against the State except the class action takings claim and Riemer's individual claim for trespass to try title. *State v. Riemer*, 94 S.W.3d 103, 112–13 (Tex. App.—Amarillo 2002). Neither party sought review of that decision in this Court. Thus, the only live class action claim at this time is the takings claim.

3

the trial court's findings on standing but affirmed its order denying class certification, holding that the trial court did not abuse its discretion in finding that the class representatives would not fairly and adequately protect the interests of the class. 342 S.W.3d 809, 813. Central to the court of appeals' holding that the trial court did not abuse its discretion in refusing to certify the proposed class was that conflicts of interest existed among the class representatives and the other proposed class members. *Id.* at 815–16. Due to these conflicts, the court of appeals held that the class representatives failed to satisfy the adequacy-of-representation requirement. *Id.* at 818. In particular, the court of appeals focused on the following two conflicts initially identified by the trial court: "(1) the claims of the [class] representatives conflict with the claims of other proposed class members who ha[d] signed [the MBA,] . . . and (2) the claims of the [class] representatives conflict with claims of other proposed class members who own land on opposite sides of the Canadian River." *Id*. at 815.

The class representatives petitioned this Court for review, complaining that the court of appeals erred in affirming the trial court's order denying class certification. We granted the class representatives' petition. This Court has jurisdiction to review an interlocutory order refusing to certify a class in a suit brought under Rule 42. Tex. Gov't Code § 22.225(d); Tex. Civ. Prac. & Rem. Code § 51.014(a)(3). We review a class certification order for abuse of discretion, which occurs when the trial court acts arbitrarily, unreasonably, or without reference to any guiding principles. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008).

## II. Class Action Certification Under Rule 42

A class action is an extraordinary procedural device designed to promote judicial economy by allowing claims that lend themselves to collective treatment to be tried together in a single proceeding. *See generally Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452–53 (Tex. 2000) (discussing the origination and purpose of the class action device). Because Rule 42 is patterned after Federal Rule of Civil Procedure 23, federal decisions and authorities interpreting current federal class action requirements are instructive. *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000). There is no right to litigate a claim as a class action under Rule 42. *Id.*

Rule 42 establishes four initial prerequisites to class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Tex. R. Civ. P. 42(a). In addition to Rule 42(a)'s prerequisites, a proposed class action must satisfy at least one of the three subdivisions of Rule 42(b). Tex. R. Civ. P. 42(b). A trial court must apply a rigorous analysis to determine whether Rule 42's certification requirements have been satisfied. *Bowden*, 247 S.W.3d at 696. The class representatives argue that the court of appeals erred in holding that the conflicts identified by the trial court prevent the class representatives from establishing Rule 42(a)(4)'s adequacy-of-representation prerequisite. We agree.

Rule 42(a)(4)'s adequacy-of-representation prerequisite requires the proponent of class certification to establish that the class representative will fairly and adequately protect the interests of the class. Tex. R. Civ. P. 42(a)(4); *Bowden*, 247 S.W.3d at 707 ("The class representative has the burden of proving adequacy."). "[A] class representative whose interests conflict with the interests of other class members may not adequately represent a class." *State Farm Mut. Auto. Ins. Co. v.*

5

*Lopez,* 156 S.W.3d 550, 556 (Tex. 2004). The existence of minor conflicts standing alone, however, will not prevent a class representative from adequately representing a class. *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). For a conflict of interest to prevent class certification under Rule 42(a)(4), the conflict must be fundamental and go to the heart of the litigation. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003); *see also In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223 (3d Cir. 2012) ("Only a fundamental conflict will defeat adequacy of representation."). A conflict that is merely speculative or hypothetical will not defeat the adequacy-of-representation requirement. *See Gunnells*, 348 F.3d at 430. We address each of the conflicts identified by the trial court in turn.

### A.  Conflict Regarding the MBA

Prior to the hearing on the class representatives' motion to certify, the settling parties to the MBA agreed upon a location for the banks of the Canadian River so that the boundary between the settling landowners and the State could be established. The settling landowners were necessarily included within the definition of the class that the class representatives initially sought to be certified. The court of appeals held that the testimony of one landowner who opposed his inclusion in the class coupled with the class representatives' questioning of the validity of the MBA lent sufficient support to a potential conflict that would prevent class certification. 342 S.W.3d at 817–18. The class representatives argue that the MBA fails to create a real conflict between the class representatives and the settling landowners because the conflict does not go to the heart of the litigation. The State responds that antagonism between the settling landowners and class representatives is sufficiently established by the settling landowner's testimony and the class

6

representatives' counsel's statements at the certification hearing regarding their intent to challenge the MBA.

We disagree with the State and the court of appeals' holding that a potential conflict among the settling landowners and the class representatives regarding the MBA is sufficient to deny class certification in this case. First, Rule 42 does not require that all members agree on the propriety of the action in order to certify the class. *Cf.* 5 JEROLD S. SOLOVY ET AL., MOORE'S FEDERAL PRACTICE § 23.25[2][b][iii] (3d ed. 2012) (providing that disagreements regarding the appropriateness of the litigation generally will not defeat certification under Rule 23(a)(4) of the Federal Rules of Civil Procedure). The landowners' motion for class certification alleges that certification is proper under Rule 42(b)(2) and 42(b)(3). If the settling landowners wished to honor the MBA and thus dispute the appropriateness of this lawsuit, then they may utilize Rule 42's procedures for opting out of the class. *See* TEX. R. CIV. P. 42(c)(2)(B)(v) (allowing plaintiffs in a certified class under Rule 42(b)(3) to be excluded from the class); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 667–68 (Tex. 2004) (providing that trial courts must consider opt-out rights for class members under any theory, including Rule 42(b)(2)). Second, the class representatives clarify their position in this Court that it is not their intention to invalidate the MBA. Again, we see no reason why the settling landowners could not continue to honor the MBA, to the extent it is valid, regardless of the relief, if any, that may be ultimately awarded in this case. Finally, the State argues that *Swain v. Brinegar*, 517 F.2d 766, 769, 779–80 (7th Cir. 1975), supports its argument that a conflict fatal to class certification exists when other potential class members have already settled with the defendant. We find *Brinegar* distinguishable and thus unpersuasive.

7

In *Brinegar*, a group of landowners sought to certify a class composed of owners and tenants of farmland who were subject to having their land condemned for the purposes of the construction of a highway. *Brinegar*, 517 F.2d at 779–80. The class definition specifically included "those who have already conveyed or agreed to convey their property under threat of condemnation." *Id.* at 780. The court in *Brinegar* held that the named plaintiffs could not meet Federal Rule of Civil Procedure 23(a)(4)'s adequacy-of-representation requirement because those who had "'already conveyed or agreed to convey their property' will have an interest in the integrity of their bargain," and will also oppose any change in the proposed highway's route. *Id.* In other words, the named plaintiffs in *Brinegar* were directly challenging the location of the proposed highway, and as noted by the trial court, if the class action succeeded, then the state would likely choose a different route thus negating the state's need for the land already conveyed or land that landowners had agreed to convey. *See Swain v. Brinegar*, 378 F. Supp. 753, 756 (S.D. Ill. 1974). In this case, however, any relief granted would not prevent the settling landowners from continuing to honor the MBA, and the class representatives do not intend to attack that settlement like the named plaintiffs intended to attack the conveyances in *Brinegar*. While the conflict identified in *Brinegar* went directly to the heart of the class action litigation, the conflict regarding the MBA in this case does not. Therefore, the potential conflict among the settling landowners and the class representatives does not prevent the class representatives from serving as adequate representatives of the proposed class. The court of appeals erred in holding otherwise.

8

**B.      North-South Conflict**

The trial court found—and the court of appeals held without analysis—that the class representatives failed to satisfy Rule 42(a)(4)'s adequacy-of-representation requirement due to the potential conflict between landowners on the north and south of the Canadian River in locating the boundaries of the riverbed.  The class representatives argue that no evidence supports antagonism between proposed class members on opposite sides of the river, and even if there was a conflict, the class representatives direct the Court to authority that holds that a conflict must be more than speculative or hypothetical.  *See Emp'rs Cas. Co. v. Tex. Ass'n of School Bds. Workers' Comp. Self-Ins. Fund*, 886 S.W.2d 470, 476 (Tex. App.—Austin 1994, writ dism'd w.o.j.).  The State responds that locating the riverbed creates a "risk" that landowners on the north side will attempt to locate their lands as far south as possible while landowners on the south side want the exact opposite.

While we do not disagree with the State that there is a risk for a conflict between the proposed class members on opposite sides of the river, we hold that this risk is too speculative and theoretical to prevent class certification under Rule 42(a)(4).  *See Gunnells*, 348 F.3d at 431.  Our holding is supported by the fact that the purported conflict rests on the questionable proposition that locating the northern boundary of the riverbed is dependent on locating the southern boundary.  It is entirely probable—and we are presented with no evidence to the contrary—that locating the northern boundary of the Canadian River will have no effect on where its southern boundary is located.  Therefore, the court of appeals erred in holding that the purported conflict between class members on opposite sides of the river prevented the class representatives from establishing adequacy under Rule 42(a)(4).

9

## C.    Family Dispute Conflict

The trial court also found that Montford Johnson III, who is the assistant managing partner of class representative Johnson Borger Ranch Partnership, was not an adequate representative for his relatives that were are also members of the proposed class. The court of appeals did not address this conflict. The State argues that this conflict also prevents the class representatives from establishing adequacy under Rule 42(a)(4) because Johnson's relatives have sued him in the past and have no reason to trust him. In addition, the State argues that all of Mr. Johnson's relatives that would be members of the proposed class signed the MBA. For similar reasons articulated in section II.A of this opinion, *supra*, we disagree that this potential conflict prevents certification of the proposed class in this case. Again, to the extent Mr. Johnson's relatives disagree with the propriety of the litigation, the class representative, or the class representative's counsel, they may utilize Rule 42's procedures for opting out of the class. *See* TEX. R. CIV. P. 42(c)(2)(B)(v).

### III. Conclusion

For these reasons, we conclude that the trial court abused its discretion by relying on the conflicts identified in its order denying class certification to establish that the class representatives' failed to satisfy Rule 42(a)(4)'s adequacy-of-representation prerequisite. And, the court of appeals erred when it affirmed the trial court's order on the same grounds. Accordingly, we reverse the court of appeals' judgment affirming the trial court's order denying class certification and remand the case back to the court of appeals to address the remaining contested requirements of class certification under Rule 42.

_____

10

Paul W. Green
Justice

OPINION DELIVERED:  February 22, 2013