ACCEPTED
03-14-00208-CV
6829516
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/8/2015 3:06:30 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00208-CV

IN THE COURT OF APPEALS FOR THE THIRD DISTRICT
OF TEXAS AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/8/2015 3:06:30 PM
JEFFREY D. KYLE
Clerk

## CANYON LAKE ISLAND PROPERTY OWNERS ASSOCIATION, CYNTHIA M. GRIFFIN, RICHARD A. CONLEY AND BILL LESTER,

**Appellants-Plaintiffs**

**v.**

## STERLING/SUGGS LIMITED PARTNERSHIP, NEAL E. SUGGS AND NADINE R. SUGGS,

**Appellees-Defendants.**

Interlocutory Appeal from Cause No. C2012-1457B, the 207th Judicial
District Court, Comal County, Texas

## APPELLEES' MOTION FOR RECONSIDERATION *EN BANC*

**MARTIN & DROUGHT, P.C.**
GERALD T. DROUGHT
State Bar No. 06134800
gdrought@mdtlaw.com
MATHIS B. BISHOP
State Bar No. 24045500
mbishop@mdtlaw.com
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, TX 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
**ATTORNEYS FOR APPELLEES**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES ......................................................................... ii

I. INTRODUCTION .................................................................................... 1

II. FACTUAL BACKGROUND ................................................................... 1

III. THE TRIAL COURT ACTED WITHIN ITS DISCRETION
IN CERTIFYING THE CLASS ................................................................ 2

IV. THE NUMEROSITY REQUIREMENT IS SATISFIED ........................... 5

V. THE NAMED CLASS REPRESENTATIVES ARE ADEQUATE .............. 6

VI. CONCLUSION ...................................................................................... 9

CERTIFICATE OF SERVICE .................................................................... 11

APPENDIX ............................................................................................... 12

# TABLE OF AUTHORITIES

***CASES***                                                         ***PAGE***

*Bowden v. Phillips Petroleum Co.*,
247 S.W.3d 690 (Tex. 2008)................................................................................4

*Riemer v. State*,
392 S.W.3d, 635 (Tex. 2012).............................................................................7

*Southwestern Ref. Co. v. Bernal*,
22 S.W.3d 425 (Tex. 2000)................................................................................4

*Sullivan v. Barnett*,
471 S.W.2d 39 (Tex. 1971)................................................................................3

*Thillens, Inc. v. Community Currency Exch. Ass'n of Illinois, Inc.*,
97 F.R.D. 668 (N.D. Ill. 1983)..........................................................................8

*Wright v. Vernon Compress Co.*,
296 S.W.2d 517 (Tex. 1956)..............................................................................3

***RULES AND STATUTES***

Tex. R. App. P. 49.7...........................................................................................1

*Federal Practice & Procedure* § 1762 ..............................................................6

*Federal Practice & Procedure* § 1762, 7.2.A.2 ...............................................6

*Federal Practice & Procedure* § 1762, 7.2.A.3 ...............................................7

*Federal Practice & Procedure* 1768 .................................................................8

## APPELLEES' MOTION FOR RECONSIDERATION *EN BANC*

Appellees Sterling/Suggs Limited Partnership, Neal E. Suggs and Nadine R. Suggs file this Motion for Reconsideration *En Banc* pursuant to TEX. R. APP. P. 49.7 as follows:

## I.
## INTRODUCTION

Attached under **Appendix Tab No. 1** is a copy of the Opinion issued June 5, 2015 by a Panel consisting of Chief Justice Rose, Justice Pemberton and Justice Goodwin.[1] Appellees now ask the Court for reconsideration *en banc*.

## II.
## FACTUAL BACKGROUND

The background facts are well known to the Court and need not be recited again at length. In a nutshell, this is an easement dispute brought by Canyon Lake Island Property Owners Association (hereinafter the "Association"), a voluntary association of owners of lots in the Canyon Lake Island Subdivision. The Association filed suit alleging trespass and interference with its members' property rights related to a claimed prescriptive easement, which the Appellees deny.

The Appellees filed a motion to certify the case as a class action, and a joinder seeking to add Cynthia M. Griffin, Richard A. Conley and Bill Lester (hereinafter referred to as "Representative Association Members") as parties and to

---

[1] The Panel denied Appellees' Motion for Rehearing on August 24, 2015.

1

designate them as class representatives. The trial court granted the motion to certify. This interlocutory appeal was then commenced by the Appellants.

On June 5, 2015 this Court reversed and remanded the trial court's class certification. Appellees believe there are issues that require further review by the Court in the interest of justice. On August 24, 2015, the Appellees' Motion for Rehearing was denied. This Motion requests that the entire Court sitting en banc reconsider the Panel's decision.

## III.
## THE TRIAL COURT ACTED WITHIN ITS
## DISCRETION IN CERTIFYING THE CLASS

It is hard to imagine a scenario more appropriate for a class action. It is undisputed that there are approximately 163 lots in the Canyon Lake Island subdivision, approximately 300 current individual property owners, and that joining each of the owners as parties to this suit would cost approximately $50,000 in filing fees. The Court could take judicial notice that the Comal County Appraisal District lists the property on which the prescriptive easement is claimed with a value of $134,300, making the $50,000 in filing fees very relevant. It is further undisputed that membership in the Association is voluntary, and that each non-member owner (current or future) could assert claims similar to the Association's claims in the case at bar, and these claims would not be barred by res judicata or collateral estoppel. It is undisputed that subsequent similar suits could

2

result in inconsistent rulings and judgments. Nevertheless, this Court concluded the trial court failed to conduct a "rigorous analysis" in certifying the class. The rigorous analysis should take into consideration the alternatives to a class action. No suitable alternative to a class action is mentioned by this Appellate Court. There is none.[2]

This Court recognizes that these basic facts are uncontroverted, and does not cast doubt on the veracity of the Appellees' undisputed assertions. Nevertheless, the Court would require more evidence, the nature of which is left a mystery, and a more rigorous analysis of undisputed issues. This is an invasion of the trial court's discretion and an unprecedented requirement of a more rigorous analysis of undisputed issues.

In a jury trial context, it has long been the law that undisputed issues are not submitted to the fact finder. The reasoning behind this principle is obvious. When a matter is undisputed, there is no need to present evidence to prove what is not in controversy. *See Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971); *Wright v. Vernon Compress Co.*, 296 S.W.2d 517, 523 (Tex. 1956) ("The trial court is

---

[2] While not a ground for appeal, but rather for the Court's information, the Appellees continue to assert the Association has no standing to bring this suit because it is a voluntary association with far less than 100% of the property owners being members, and it is seeking to assert rights on property that is not even in the subdivision. The trial court denied the Defendants' motion to dismiss for lack of standing presumably because the trial court believed the Plaintiffs could bring their case as a class action. If there is no class certification, the Defendants will reurge their motion to dismiss for lack of standing.

required to submit only controverted issues. No jury finding is necessary to establish undisputed facts.").

It is well-settled and undisputed by the parties that a trial court's certification of a class action is reviewed under an abuse of discretion standard. A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008). Here the panel of the Court criticizes the trial court's class certification with little indication why class certification is inappropriate in this case. The only substantive criticism of the certification is that the named class representatives claim to be unwilling to serve, which is addressed below. Otherwise, this Court's opinion provides no guidance to trial courts. It is a vague mandate to scrutinize uncontroverted issues, and would require voluminous evidence to establish matters not in dispute.

In a class certification proceeding, the trial court must perform a rigorous analysis to determine whether all the prerequisites to class certification have been met and how the claims will be tried. *See Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). The trial court in this case analyzed and made findings as to each of the prerequisites to class certification, as set forth in the trial court's thorough and well-reasoned order. Despite the acknowledged abuse of

4

discretion standard, this Court allows the trial court no discretion in concluding this case is appropriate for class certification.

The trial court recognized the appropriateness of a class action. The alternatives to class certification are unjust and unwieldy: Either the Appellees spend approximately $50,000 in fees to join 300 individual property owners (not to mention the additional attorney's fees and expenses, which would far outstrip the value of the Appellee's property), or the parties proceed with the litigation despite the known risk of subsequent suits and inconsistent judgments. These are the undisputed alternatives to class certification, which this Court does not deny.

This Court improperly substitutes its own judgment for that of the trial court's. Moreover, this Court's opinion would for the first time ever require trial courts to somehow more "rigorously" analyze undisputed facts and issues – an unprecedented and wholly improper holding. The trial court performed the required rigorous analysis required, and acted within its discretion in certifying the class.

## IV.
## THE NUMEROSITY REQUIREMENT IS SATISFIED

This Court would apparently require some additional unspecified evidence to prove that joining 300 additional property owners and trying the case with hundreds of parties would be "impracticable." It is, of course, possible in theory to join thousands or even millions of parties to any lawsuit. But our courts have long

5

recognized that it becomes impracticable at a certain point. This is the class action's *raison d'être*.

Here the facts are undisputed that in the absence of class certification the Appellees would have to spend tens of thousands of dollars and join hundreds of parties. The trial court quite reasonably concluded that joining every property owner is impracticable. What additional evidence beyond the undisputed facts, or what additional analysis this Court would require from the trial court is uncertain. The trial court acted well within its discretion in finding the proposed class meets the requirements of numerosity and impracticability.

## V.
## THE NAMED CLASS REPRESENTATIVES ARE ADEQUATE

This Court voices concern because the class representatives own lakefront lots, and some class members' lots are not on the lakefront. There is no requirement that all class members' claims be identical. *Federal Practice & Procedure* § 1762 notes: "Plaintiffs' grievances generally must share a common question of law or fact. In fact, only one question of law or fact must be common to the proposed class. Some factual differences among class members do not defeat commonality." *Federal Practice & Procedure* § 1762, 7.2.A.2. Commonality (internal citations omitted). "The typicality requirement centers on 'whether the class representative's claims have the same essential characteristics as those of the putative class. If the claims arise from a similar course of conduct and

6

share the same legal theory, factual differences will not defeat typicality.' Put another way, typicality can be determined by whether there is a sufficient nexus between the claims of the named representatives and those of the class. As with commonality, factual differences do not defeat typicality if the course of conduct and the claims are based on the same legal theory." *Federal Practice & Procedure* § 1762, 7.2.A.3. Typicality (internal citations omitted).

The class representatives' lakefront lots do not make them inadequate representatives, nor would they be inadequate if their lots did not have lakefront locations. The central issue in this case - what easement rights the owners have across the Appellees' property - affects all property owners in the subdivision identically. The possibility that a prescriptive easement might affect the value of the various lots differently does not make the representation inadequate. This conflict, even assuming it exists, is neither "fundamental," nor does it "go to the heart of the litigation." *See Riemer v. State*, 392 S.W.3d, 635 639 (Tex. 2012).

This Court recognizes the three named class representatives are "subdivision property owners, Association members, involved in and knowledgeable about the litigation generally, and would be available for trial." In a calculated effort to avoid certification, the class representatives claim to be unwilling to participate. As pointed out in the Appellee's brief, a named defendant class representative's unwillingness to serve as a representative "should not deter a court from naming it

7

as it representative." *Thillens, Inc. v. Community Currency Exch. Ass'n of Illinois, Inc.*, 97 F.R.D. 668, 678 (N.D. Ill. 1983).

This Court recognizes the rule discussed in *Thillens* and other cases cited by the Appellees, but finds a distinction between a plaintiff's class representative and a defendant's class representative. This distinction is misplaced. Here the Appellees bring their own declaratory judgment action to determine the absence of any prescriptive easement, among other issues. Thus, the class is in effect a defendant class, even though the class representatives might be called plaintiffs.

This Court's "logical concern" about the willingness of the named representatives to represent the class overlooks the more glaring logical concern: How can the Appellees proceed with class certification if each named representative need only profess her unwillingness to serve in order to defeat certification? This is precisely the concern of the many courts that have recognized that unwilling representatives of a defendant class can still be adequate. *See Federal Practice & Procedure* 1768.

Finally, the Court's concern that the class representatives might opt out is merely hypothetical. They have not opted out or even stated they intend to. Regardless, should they opt out in the future, additional representatives may be named. There mere possibility that the representatives could opt out is hardly grounds for reversal of class certification.

8

# VI.
## CONCLUSION

For the foregoing reasons, the Appellees request that the entire Court review this matter.

THEREFORE, it is requested that:

a) The court grant reconsideration *en banc* and reset oral argument on this matter;

b) The court grant the relief requested in the Motion for Rehearing; and

c) Appellees be granted such other relief to which it may be entitled.

Respectfully submitted,

**MARTIN & DROUGHT, P.C.**
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, Texas 78205
Telephone: (210) 227-7591
Telecopier: (210) 227-7924

By: _____
**GERALD T. DROUGHT**
State Bar No. 06134800
gdrought@mdtlaw.com
**MATHIS B. BISHOP**
State Bar No. 24045500
mbishop@mdtlaw.com
**ATTORNEYS FOR APPELLEES**

# CERTIFICATE OF COMPLIANCE

As required by TEX. R. APP. P. 9.4(i)(3), I certify that the Appellees' Motion for Reconsideration *En Banc* contains 1,916 words, excluding the parts of the Motion that are exempted by TEX. R. APP. P. 9.4(i)(1).

MATHIS B. BISHOP

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument will be sent to the following parties of record by:

|          |                                            |
|----------|--------------------------------------------|
| _____ | Regular Mail                               |
| _____ | Certified Mail, Return Receipt Requested   |
| _____ | Hand Delivery                              |
| ___X___  | Facsimile                                  |

Mr. Tom Newton, Jr.
Allen Stein & Durbin
6243 IH-10 West, Ste. 700
San Antonio, TX 78201
*Facsimile: 738-7488*

on the 8th day of September, 2015.

GERALD T. DROUGHT
MATHIS B. BISHOP

11

# APPENDIX

**Tab No.**

1     Opinion issued June 5, 2015

12

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00208-CV

Canyon Lake Island Property Owners Association, Cynthia M. Griffin, Richard A. Conley, and Bill Lester, Appellants

v.

Sterling/Suggs Limited Partnership, Neal E. Suggs, and Nadine R. Suggs, Appellees

FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. C2012-1457B, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## MEMORANDUM OPINION

This is an interlocutory appeal from a class certification under Rule 42 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 42 (class actions). Appellant Canyon Lake Island Property Owners Association, an entity representing some of the property owners in the Canyon Lake Island subdivision, filed suit to enforce two easements—one express, the other prescriptive[1]—burdening a tract of land owned by appellees Sterling/Suggs Limited Partnership, Neal E. Suggs, and Nadine R. Suggs (collectively, "Sterling/Suggs"). Sterling/Suggs denied that it was obstructing the express easement for lake access and maintained that the property owners had not established a prescriptive easement allowing them to use the property for any purpose other than access. Sterling/Suggs then successfully petitioned the district court to certify the Association's

---

[1] A "prescriptive easement" is an easement created from an open, notorious, continuous, exclusive, and adverse use over a statutory period. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979).

APPENDIX 1

lawsuit as a plaintiff class action—joining all past, future, and present subdivision property owners as party plaintiffs—and it is this class certification that the Association, Griffin, Conley, and Lester challenge in this interlocutory appeal. Based on our conclusion that the district court did not conduct the rigorous analysis required for class-action certifications, we will reverse the certification and remand for further proceedings.

## Background

Residents and property owners of neighborhoods located on or near a body of water often confront issues involving access to that body of water. While this is especially true for properties that lack waterfront, it can also be an issue for waterfront-property owners if, for example, that access affects neighborhood property values or provides a specialized type of access. But before the circumstances underlying this case arose, the proposed class members in this case—i.e., the property owners of Canyon Lake Island, a subdivision located on a northern peninsula of Canyon Lake, in Comal County—did not face any such lake-access issues. According to the Association, the residents of the subdivision had been using and improving[2] a nearby .704-acre waterfront lot as a community gathering place and means of access to Canyon Lake since 1971. Further, in 2005, a deed conveying five tracts of real property to Sterling/Suggs, including the .704-acre waterfront lot discussed above, expressly reserved to all subdivision property owners a 15-feet wide "pedestrian and vehicular" easement across the .704-acre lakefront lot from the lake to a road running through the subdivision.

_____

[2] For example, the Association asserts that the residents paved a road across the property.

2

The Association claims, however that beginning around 2010, Sterling/Suggs began to physically obstruct the property owners' ability to use their express-easement as well as the prescriptive-easement the Association asserts that the residents had secured by their long-standing use and improvement of the property. For example, the Association claims that by 2012, Sterling/Suggs had installed a locked gate at the lot's boundary with the road; built a fence and gate post inside the lot; destroyed the paved surface built by the property owners' "causing it to be impassable by vehicle" and "unsafe for foot traffic"; obstructed the easement with "the roof edge of a building," rocks, "huge concrete building blocks," and boulders; and placed a boulder at the edge of the express-easement location where it meets the lake "to imped[e] pedestrian and vehicular traffic." Accordingly, the Association filed a claim for trespass and interference with property rights against Sterling/Suggs, seeking injunctive relief regarding the obstructions and declaratory relief as to the validity and scope of the express easement as granted in the 2005 deed and the prescriptive easement of access and use established by 30 years of the owners' continuous and adverse use of the lot as a community park and gathering area and as a way to access the lake.

In response to the Association's lawsuit, Sterling/Suggs denied the establishment of any prescriptive easement burdening its property, counterclaimed for declaratory judgment to that effect, and although not disputing the existence of the express easement, denied that it had obstructed the owners' use of that express easement. The Association obtained a temporary injunction prohibiting Sterling/Suggs from obstructing the use of the express easement by the subdivision's owners and residents. Soon thereafter, Sterling/Suggs sought to certify the Association's suit as a class action and to specifically join subdivision property owners Griffin, Conley, and Lester as the class representatives. Griffin, Conley, and Lester, who objected to their

3

joinder in the suit and to being made representatives, moved to strike Sterling/Suggs's joinder request and to deny the class certification. After a hearing on the certification motion, the district court issued an order certifying the class and naming Griffin, Conley, and Lester as the unwilling class representatives. It is from this certification order that the Association, Griffin, Conley, and Lester now appeal.

## Discussion

Appellants challenge the district court's class-certification order in three issues—(1) the evidence in the record does not support class certification; (2) the district court should have dismissed Griffin, Conley, and Lester as parties; and (3) Griffin, Conley, and Lester are not appropriate class representatives. The underlying inquiry triggered by these challenges, and the scope of our interlocutory review here, is whether the district court properly and accurately performed the rigorous analysis required by Rule 42 to certify a class action.

### Class-action certification—background and standard of review

To be certified as a class action, a proposed class must satisfy the requirements of Rule 42 of the Texas Rules of Procedure. *See* Tex. R. Civ. P. 41; *Riemer v. State*, 392 S.W.3d 635, 637, 639 (Tex. 2012).[3] Sterling/Suggs, as the party seeking to litigate the Association's lawsuit as a class action, has the burden to establish that the proposed class satisfies Rule 42's requirements. *See Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013) ("The Rule 'does not set forth a mere

---

[3] Because Rule 42 was modeled after Rule 23 of the Federal Rules of Civil Procedure, federal case law interpreting Rule 23 may be relied on as persuasive authority by Texas courts in construing Rule 42. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000).

pleading standard.' . . . . Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). . . . The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011))). The prerequisites to a class action as set forth in Rule 42(a) are:

(1)     numerosity ("the class is so numerous that joinder of all members is impracticable");

(2)     commonality ("there are questions of law or fact common to the class");

(3)     typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and

(4)     adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").

*See* Tex. R. Civ. P. 42. If these four threshold requirements are met, the class proponent must then assert and establish that the proposed class action falls under at least one of Rule 42(b)'s subdivisions. For example, as invoked in the certification order issued here, Rule 42(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* 42(b)(3). In addition to (b)(3), Sterling/Suggs asserted in its certification motion that the proposed class also fit into the categories described in subsection (b)(1):

(1)     the prosecution of separate actions by or against individual members of the class would create a risk of

5

(A)     inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B)     adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

*Id.* 42(b).

We review a trial court's decision to certify a class for an abuse of discretion. *See, e.g., Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008); *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Bowden*, 247 S.W.3d at 696; *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). We do not, however, indulge every presumption in the trial court's favor, as compliance with class-action requirements must be demonstrated rather than presumed. *Bowden*, 247 S.W.3d at 696 (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). The trial court must perform a "rigorous analysis" of the Rule 42 requirements—both subsection (a)'s threshold requirements and subsection (b)'s categorizations—before certifying a class. *See, e.g., Wal-Mart*, 131 S. Ct. at 2551–52; *Riemer*, 392 S.W.3d at 639 ("A trial court must apply a rigorous analysis to determine whether Rule 42's certification requirements have been satisfied." (citing *Bowden*, 247 S.W.3d at 696; *Bernal*, 22 S.W.3d at 435 (citing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)))). Courts have traditionally construed this directive to require trial courts to, among other things, look "'beyond the pleadings . . . as a court must understand the claims, defenses, relevant facts, and applicable

substantive law in order to make a meaningful determination of the certification issues.'" *Bernal*, 22 S.W.3d at 435 (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)).

**Sterling/Suggs's motion and evidence**

In its motion seeking to certify the class, Sterling/Suggs argued that if the Association's lawsuit was not certified as a class action that included all past, present, and future owners of lots in the subdivision, it would be subject to multiple suits regarding whether it trespassed or damaged the express easement and the existence of the prescriptive easement. Despite their unwillingness to be either plaintiffs or class representatives, the motion sought to have the Association, Griffin, Conley, and Lester named as class representatives because allowing an "unwilling representative to abdicate would vitiate the effectiveness of [Sterling/Suggs's] class action," and because those proposed representatives "have demonstrated their ability to prosecute and finance this case." The motion listed the prerequisites of Rule 42(a) and stated, with varying degrees of explanation that will be discussed in more detail below, that each requirement had been satisfied. The motion further asserted that the proposed class could be maintained under Rule 42(b)(3) (offering as the support for this assertion the verbatim requirements of that subsection), but it also described the class as meeting the requirements of subsections (b)(1)(A) and (b)(1)(B) (again offering as the support for this assertion the verbatim requirements of the relevant subsections).

At the hearing on its motion to certify the class, Sterling/Suggs introduced into evidence a copy of the subdivision plat, which provides general information regarding the subdivision, including that it consists of lots numbered 1 through 171. Sterling/Suggs also offered

7

the testimony of Richard Conley, one of the property owners that Sterling/Suggs was seeking to join in the case as an unwilling plaintiff and class representative, whose testimony can be fairly summarized as follows—

- He owns eight lots in the subdivision (including his homestead), is an Association board member, and has been involved in the litigation, including depositions, planning, and soliciting donations from other property owners to pay for the litigation. He understands the issues in the case and would be available to attend trial. He believes that the Association has or could raise the funds to pay for the legal fees associated with the lawsuit.

- Lester is retired, lives in Houston, owns one lot in the subdivision, is an Association board member, and is actively involved in the litigation.

- Griffin is a real estate broker, owns two or more lots, is an Association board member, and is actively involved in the litigation.

- He believes that Tom Newton, the Association's attorney, is competent and has done a good job handling the case.

- Neither he, Lester, nor Griffin are interested in being a parties to the litigation; none of them have sued or threatened to sue regarding the easements. He has no intention of suing Sterling/Suggs personally regarding the easements.

- His property, Lester's property, and Griffin's property are all lakefront property that have direct access to the lake. Having direct lake access is not typical for the other lots in the subdivision because less than half the lots are waterfront property.

- He stated that some property owners are of the opinion that the easement would raise the value of all the properties in the subdivision, but that others thought some owners might be of the opinion that it would be more valuable to those with lakefront property if there was no easement.

No other evidence was offered at the hearing, although counsel for the parties presented argument to the court regarding the propriety of class certification. That argument included uncontested assertions that membership in the Association was not mandatory; each of the subdivision's owners and residents could assert a claim similar to that of the Association's against Sterling/Suggs if they

8

so desired; and there are approximately 163 lots, approximately 300 current individual property owners, and it would cost approximately $50,000 in filing and service fees to join those parties to a suit. The district court also had the parties' pleadings before it.

**Class-certification order**

In its order certifying the class, the district court did not make specifically identified findings or conclusions regarding the Rule 42 prerequisites, but it did find, presumably regarding numerosity, that "the cost of joining approximately 200 individual property owners as plaintiffs in the case, individually, is prohibitive" and that a class action "would be far more manageable and time efficient than trying as many as 200 separate lawsuits." *See* Tex. R. Civ. P. 42(a)(1) (class action appropriate only if "the class is so numerous that joinder of all members is impracticable"). Likewise, regarding the commonality prerequisite, the court found that—

> [T]he common issues of fact and law among the class members are whether a prescriptive easement exists on the subject property by reason of alleged use by the owners and residents of Canyon Lake Island of the claimed easement tract for the purpose of traveling to and from Canyon Lake Reservoir from Military Drive, by foot and with vehicles, including the towing of boats and other watercraft, and whether Defendant's obstructed the easement rights of the owners and resident[s] of Canyon Lake Island . . . .

*See id.* 42(a)(2). As to the typicality requirement, the district court listed the elements of the proposed class's claims and defenses and found that "there are no issues of fact or law that affect only individual class members"; that "whether the Plaintiffs have a prescriptive easement across the Defendant's tract will be the object of most of the efforts of the litigants and the Court"; and that the cases will involve the "same witnesses, the same evidence, [and] the same legal issues." The

9

district court named the Association, Griffin, Conley, and Lester as the class representatives and then determined that Griffin, Conley, and Lester were "qualified and adequate" class representatives. *See id.* 42(a)(3)–(4) (requiring representatives' claims be typical of other claims and that representatives adequately represent class). After acknowledging in the order that some of these representatives own lakefront properties and may not need an easement to access the lake, the court explained that this did not destroy typicality because the representatives "would benefit from an additional access to the lake" and access to the lake for all owners would "likely increase the value of all the property in the subdivision." The district court noted that the appointed representatives had been involved in the Association's meetings and litigation.

Regarding the makeup of the class and its claims, the district court then designated the following "classes" of plaintiffs:

- All current owners of property in the Canyon Lake Island Subdivision;

- All past owners of property in the Canyon Lake Island Subdivision who acquired title after September 22, 1971; and

- All future owners of property in the Canyon Lake Island Subdivision.

Those plaintiffs, the district court determined next, could assert the following "claims and defenses" as part of their class action:

- Trespass—"The plaintiff owned or had a lawful right to possess real property; [t]he defendant entered the plaintiff's land and that entry was . . . physical, . . . intentional, . . . voluntary; and [t]he defendant's trespass caused injury to the plaintiff's right of possession."

10

- Prescriptive easement—"The plaintiff's use of the claimed easement tract was . . . open and notorious, . . . adverse to the defendant's claim of right, . . . exclusive, uninterrupted, and . . . continuous for a period of ten years."

- Tortious interference with property—"The invasion or interference with [p]laintiff's property rights by [d]efendant occurred, that such invasion/interference caused [p]laintiff damage, and such invasion/interference was without just cause nor was otherwise excused."

Finally, the district court found that the proposed class could be maintained under the following Rule 42(b) categories:

- 42(b)(1)(A)—the prosecution of separate actions would create a risk of inconsistent adjudications with incompatible standards of conduct for the party opposing the class;

- 42(b)(1)(B)—the prosecution of separate actions would create a risk of adjudications that would be dispositive of, or substantially impair or impede, interests of non-parties; and

- 42(b)(3)—the questions of law or fact common to the class members predominate over questions affecting only individuals, and class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*See id.* 42(b)(1), (3). Specifically, the district court found that if Sterling/Suggs prevailed in the suit as brought by the Association, it would "likely be subject to claims by other property owners in the subdivision seeking a prescriptive easement" on the property, but that res judicata or collateral-estoppel defenses may not be available because not all the property owners are members of the Association. The district court also found that if the Association were to prevail, questions might arise regarding whether the non-members of that organization were entitled to the benefits of that judgment.

11

**Rigorous analysis**

Applying the appropriate standard of review to the record before us, we hold that the district court failed to conduct the "rigorous analysis" required by Rule 42 in deciding to certify the proposed class. Specifically, we hold that the district court abused its discretion by certifying a class action in the absence of evidence establishing that the class meets Rule 42(a)'s numerosity and adequacy requirements and that it qualifies as a class under Rule 42(b)(1)and (b)(3)'s categories.

*Numerosity/impracticability*

Satisfaction of Rule 42's requirement that the proposed class "is so numerous that joinder of all members is impracticable" depends not on some set number of potential class members, but on the particular facts of each case. *See General Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."); *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (emphasizing that "the number of members in a proposed class is not determinative of whether joinder is impracticable"); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir.1981); 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1762 (3d ed. 2005) (collecting cases in which numerosity was satisfied with as few as 25 putative class members, but not satisfied with as many as 350, and explaining that this inconsistency "graphically demonstrates that caution should be exercised in relying on a case as a precedent simply because it involves a class of a particular size"). In analyzing a proposed class's compliance with this requirement, courts should consider, in addition to the number of potential parties, factors such as judicial economy, the nature of the action, the ease

12

with which class members may be identified, the geographical location of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *See TWL Corp.*, 712 F.3d at 894. Here, the only numerosity/impracticability information Sterling/Suggs provided was a subdivision plat showing a group of (essentially) contiguous lots numbered 1 through 171, its assertions that there are "as many as 300" owners of the lots and that it would cost about $50,000 to join the owners, and its unsupported conclusion that "there are so many people, that to try the case with multiple parties would be impracticable." But aside from this unsupported conclusion, Sterling/Suggs has not explained, much less demonstrated, how it would be impracticable—i.e., extremely difficult or inconvenient, *see Federal Practice & Procedure* § 1762—to join all members of the proposed class, which the evidence shows consists of readily identifiable real-property owners of a fixed number of 160 already-identified tracts of real property that are all located in the same neighborhood. Without such a showing, the district court's certification could not have been the result of the required rigorous analysis of the numerosity/impracticability requirement.

### Adequacy of representation

This prerequisite requires a demonstration by the class proponent that the class representatives "will fairly and adequately protect the interests of the class." Tex. R. Civ. P. 42(a). Its purpose is to ensure that the representatives' interests are aligned with the interests of the unnamed class members. Factors for the trial court to consider in determining whether this prerequisite has been met include the zeal and competence of class counsel and the willingness and ability of the representatives to protect the interests of the absentees and to take an active role in and control the litigation. *Rainbow Grp., Ltd. v. Johnson*, 990 S.W.2d 351, 357 (Tex. App.—Austin

13

1999, pet. dism'd w.o.j.). The primary issue to be considered is whether conflict or antagonism exists between the interests of the representatives and those of the remainder of the class. *Riemer*, 392 S.W.3d at 639 ("'[A] class representative whose interests conflict with the interests of other class members may not adequately represent a class.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 556 (Tex. 2004)); *Rainbow Grp.*, 990 S.W.2d at 357; *see Southwestern Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 925 (Tex. 2010) (adequacy considerations include representative's connection to the class-wide injury, benefits representative receives; representative's motivation in asserting claims). For a conflict of interest to prevent certification, the conflict must be fundamental and go to the heart of the litigation. *Riemer*, 392 S.W.3d at 639 (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003)).

Based on our review of the record here, Sterling/Suggs failed to demonstrate that the three individuals named as unwilling class representatives would adequately represent the proposed class. Although the record establishes that the three are subdivision property owners, Association members, involved in and knowledgeable about the litigation generally, and would be available for trial, it also shows that they do not want to be plaintiffs or representatives, and unlike more than 50% of the property owners they would be representing, that they each own lakefront lots with their own private access to the lake. The district court found that a judgment in favor of the property owners—i.e., a determination that a prescriptive easement exists—would benefit all lots; however, other than testimony from the one lay witness that two property owners disagree about the effect of a judgment, there is nothing in the record to support (or dispute) the district court's finding that a prescriptive easement would lift all boats, as it were. Moreover, the simple fact is that a judgment in favor of Sterling/Suggs—i.e., that no prescriptive easement exist—would affect the non-lakefront

14

owners more adversely than the representatives given that the representatives have waterfront property. On this point alone, the record raises a suggestion of potential conflict that was not properly addressed by evidence put on by Sterling/Suggs.

Another possible source of antagonism that Sterling/Suggs has failed to address is the named representatives' unwillingness to participate as either parties or representatives. While being an unwilling representative of a *defendant* class may not eliminate someone from being a fair and adequate representative, *see Federal Practice & Procedure* §§ 1768, 1770, the question is more nuanced in the context of a plaintiff class such as we have here. A plaintiff's unwillingness to serve as a representative may "reflect[] antagonism to the suit being brought so that the class's interests would not be adequately protected." *Id.* § 1768. The issue is further complicated where, again as we have here, the designated plaintiff representative is not even a willing participant in the suit. In fact, although we have not found any cases directly on point that support this seemingly logical concern, the Supreme Court has suggested that forcing an unwilling plaintiff to participate in a class might abridge that plaintiff's right to his own day in court and invalidate the class-action rule. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010) (concluding, in plurality opinion, that class action does not violate Rules Enabling Act "insofar as it allows *willing* plaintiffs to join their separate claims against the same defendants in a class action"); Sergio J. Campos and Howard Erichson, *The Future of Mass Torts*, 159 U. Pa. L. Rev. PENNumbra 231 (discussing *Shady Grove* and positing that it stands for proposition that class action with unwilling plaintiffs "'abridge[s]' one's day in court" and "invalidates rule 23 at the same time"). While it is not difficult to imagine the antagonism that might arise from forcing such a situation, the bottom line for our purposes here is that Sterling/Suggs has not demonstrated that the proposed representatives

15

will adequately represent the class. As a result, the district court's certification could not have resulted from a rigorous analysis of this adequacy requirement.

### Class designations

As part of its rigorous analysis, a trial court must also determine that the proposed class qualifies under at least one of the categories described in Rule 42(b) and then, in its certification, designate the class appropriately such that it can be managed under the applicable category. *See* Tex. R. Civ. P. 42. The district court here found that the proposed class action satisfies all but one of Rule 42(b)'s subsections—omitting only subsection (b)(2), which most commentators agree is intended for class actions involving civil-rights issues, *see Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 664 (Tex. 2004). This was so despite the fact that there was nothing in the record showing that, for example:

- Sterling/Suggs is under some obligation to treat all subdivision owners alike and that different judgments would impair its ability to maintain that obligation. *See* Tex. R. Civ. P. 42(b)(1)(A); *Federal Practice & Procedure* § 1773 (noting that (b)(1)(A) is applicable where party is required, either by law or by practical necessity (i.e., riparian owner as to downstream property owners) to treat class members alike); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citing Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure* (I), 81 Harv. L. Rev. 356, 375–400 (1967)).

- Judgment in a separate action would have an adverse effect (beyond a mere precedential effect) on the potential class members—e.g., that there is a limited fund available to satisfy judgments. *See* Tex. R. Civ. P. 42(b)(1)(B); *Federal Practice & Procedure* § 1774 (noting that most common example of (b)(1)(B) class is "one in which the class members have claims against a fund that may prove insufficient to satisfy all of them").

- That a class action would be "superior to other available methods," Tex. R. Civ. P. 42(b)(3)—i.e., the class action must "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614 (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697).

16

In other words, Sterling/Suggs did not meet its burden here and, as a result, the district court's certification could not have been the result of the required rigorous analysis.

Finally, as noted, the district court's certification order designates the class action as a (b)(3) class action. This means that its members will be permitted to opt out of the class litigation if they so choose. *See* Tex. R. Civ. P. 42(b)(3); *Lapray*, 135 S.W.3d at 671 (describing mandatory and opt-out classes). Presumably, the three unwilling plaintiffs who are being forced to serve as unwilling representatives of the class would seek to exercise that right.

## Conclusion

Given the lack of evidence in the record regarding numerosity/impracticability, adequacy of representation, and the 42(b) categories, and the potential problems inherent in having unwilling plaintiffs serve as class representatives in an opt-out class, we cannot say that the district court's certification here was the result of the rigorous analysis required to certify a class under Rule 42. Accordingly, we hold that the district court abused its discretion in certifying this class. We reverse the district court's class-certification order, decertify the class, and remand this matter to the district court for further proceedings consistent with this opinion.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Reversed and Remanded

Filed:   June 5, 2015

17